[No. C059098. Third Dist. Feb. 22, 2010.]

ZARY ABDELHAMID, Plaintiff and Appellant, v.
FIRE INSURANCE EXCHANGE, Defendant and Respondent.

COUNSEL

Abdallah Law Group, Mitchell L. Abdallah; and John M. Latini for Plaintiff and Appellant.

Hansen, Kohls, Jones, Sommer & Jacob and Daniel V. Kohls for Defendant and Respondent.

OPINION

**CANTIL-SAKAUYE, J.**—Fire Insurance Exchange (FIE) denied insurance coverage to Zary Abdelhamid for the fire that burned her house down, claiming she had (1) failed to produce requested documentation, (2) failed to answer material questions when she was examined under oath, (3) failed to submit a completed proof of loss with necessary documentation, and (4) failed to cooperate in the processing of her claim. The trial court granted summary judgment for FIE on Abdelhamid's complaint alleging FIE's breach of contract, breach of the duty of good faith and fair dealing, bad faith denial of claim, and unfair business practices. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Abdelhamid's Purchase of the Kincaid Home and Events Before the Fire*

Abdelhamid purchased a house located on Kincaid Way in Sacramento in January 2005, for $729,000. She obtained insurance from FIE to cover the

house. Her sole source of income at the time was from a new restaurant she had recently opened in 2004.

In April 2005, Abdelhamid contracted with a company called Crate America for nearly $100,000 to remodel several rooms in the Kincaid house. She also entered into another contract with a company called Gourmet Kitchen for nearly $40,000 worth of kitchen cabinets. At the beginning of the contracts Abdelhamid paid the contractors $87,000 in cash.

In June 2005, Abdelhamid was able to sell her home in Elk Grove, California. Up until that time, she had been forced to carry three mortgages on her two properties with monthly payments totaling approximately $6,800. When Abdelhamid sold her Elk Grove home, she paid off the second mortgage on the Kincaid home, leaving her with a variable rate first mortgage on the home. Abdelhamid had moved her family into a one bedroom apartment because she wanted to finish the remodel of the Kincaid house before moving into it. She was unhappy with the apartment.

On June 27, 2005, the City of Sacramento stopped the remodel work because the contractors had not obtained the necessary permits to do the work. Abdelhamid was unable to get her money back from the contractors or to compel them to obtain the permits and complete the job. During the renovation, the contractors had discovered the ceilings in the Kincaid home contained asbestos.

B.  *The Fire and Initial Investigation*

The Kincaid home burned to the ground on July 14, 2005.

Abdelhamid reported the fire to the issuing agent for FIE. FIE assigned the claim to its senior adjuster Guy Lyons.

Lyons conducted an initial investigation and learned Abdelhamid was a relatively new policyholder; she contracted for a remodel shortly after her purchase of the property; the remodel was stopped by the city because of the lack of permits; the fire consumed the house more rapidly than would be expected in the absence of accelerants; and the home was vacant, so there was nothing inside the house that could have caused a fire. Lyons learned from the Sacramento Fire Department that it concluded the fire was the result of arson and that Abdelhamid appeared to have paid more for the property than it was worth. Lyons learned Abdelhamid had paid 80 percent of the contract price of her remodel, but less than half of the work was complete

when the city stopped the work. Abdelhamid had filed suit against Crate America a week before the fire started.

FIE retained a company to investigate the cause and origin of the fire. In its report, the company also concluded the fire was deliberately set (a flammable liquid was poured throughout every room of the house) and confirmed the Sacramento Fire Department investigator considered Abdelhamid to be a possible suspect. The fire department investigator indicated the house was open and unsecured at the time of the fire and that a large outdoor security light, which was normally on at night, was off the night of the fire.

Linda Lynch, coverage counsel for FIE, conducted further investigation. Lynch contacted the attorney representing Abdelhamid in her action against Crate America. The attorney, Mark Kassenbrock, told Lynch that Abdelhamid had been defrauded into the purchase of the Kincaid home by a real estate agent who, among other things, forged her name on documents to consummate the purchase, including on financing documents, which resulted in 100 percent financing on unfavorable terms. According to Kassenbrock, Abdelhamid was also convinced not to get a home inspection. Kassenbrock indicated Abdelhamid would either have paid less for the house or not purchased it at all if she had known about the problems with it. He was representing Abdelhamid in litigation against the agent and against Crate America.

The agent who issued the insurance policy to Abdelhamid told Lynch that his first contact with Abdelhamid was two days before the fire when she called to ask that certain mortgagee provisions be changed. Abdelhamid called the day before the fire to confirm the change had been made. The next day she reported the fire.

Lynch also discovered Abdelhamid had paid a gardener $4,000 in cash to clear overgrown trees and bushes from around the house less than two days before the fire.

Lynch learned Abdelhamid had filed for divorce in October 2004, and that there was a stipulated property settlement giving Abdelhamid the property in Elk Grove and her (former) husband property in New York. The dissolution was effective in April 2005.

C.  *FIE's Request for Proof of Loss, Request for Documents, and the Examination of Abdelhamid Under Oath*

In August 2005, Lynch wrote Abdelhamid advising her that FIE did not have sufficient information to accept her claim for loss. FIE, through Lynch, requested Abdelhamid to submit a completed proof of loss, produce 11

categories of documentation pertinent to either substantiation of the claim or FIE's investigation of the claim, and appear for an examination under oath (EUO).

Meanwhile Lynch's continued investigation disclosed that in 2002 Abdelhamid had filed for bankruptcy under her maiden name and had received a bankruptcy discharge in 2003. The paperwork Abdelhamid had filed in the bankruptcy showed Abdelhamid's only income at that time was less than $1,000 per month in government assistance. She had debt in excess of $174,000, primarily from credit cards and a personal loan. In the bankruptcy papers, declarations by Abdelhamid regarding her property ownership were inconsistent with the distribution of property in her dissolution proceeding.

Abdelhamid, working with a public adjuster named Joseph Ranciato, submitted a proof of loss to FIE. The proof of loss claimed a building loss in the amount of $459,000 and listed losses for contents, separate structures and additional living expenses in amounts "to be determined." The proof of loss failed to state where Abdelhamid was residing at the time of the claimed loss. The documentation Abdelhamid supplied in support of her proof of loss and in response to the request for documents related only to the sale of her home in Elk Grove, and an unrelated withdrawal of a claim for a purported theft or vandalism loss following the fire.

Lynch spoke with Ranciato about the deficiencies in the materials provided and was informed that Abdelhamid did not wish to produce any additional documentation and wanted to simply proceed with her EUO. In a letter confirming their conversation, Lynch again requested the documentation, reiterating that FIE wanted to conduct a financial evaluation of Abdelhamid, including her business, "to determine whether Ms. Abdelhamid had any financial incentive or motive to stage the loss." Lynch stated it was "disingenuous" to claim the requested documents could not be produced because they had been stolen from the detached garage at the property, as duplicate copies should readily be available. Lynch also noted that even the documentation produced appeared to be incomplete. Lynch disputed the contention that the missing financial material constituted "confidential tax records." She, nevertheless, acknowledged FIE could not compel the disclosure of the requested data, but cautioned that the failure to produce the material could be taken into consideration in making the final claims decision. Lynch noted her offer to contact Abdelhamid's attorney Kassenbrock to discuss the matter and Ranciato's direction that there be no contact because it would increase Abdelhamid's attorney fees. Lynch was also informed Kassenbrock was not

retained to address the insurance claim. Lynch expressed her dissatisfaction with Ranciato's representation that Abdelhamid would not have her damages assessment complete until the middle of November 2005. She was particularly concerned about Abdelhamid's claim for additional living expenses and fair rental claims.

In the middle of November 2005, and although a substantial amount of requested documentation was still missing, Lynch scheduled and took the EUO's of Abdelhamid and her ex-husband. Abdelhamid did not have legal counsel present with her at her EUO, but was accompanied by Ranciato. During her EUO, Abdelhamid repeatedly refused to answer any questions about her business or personal finances based on purported legal advice that the questions were not related to her homeowner's claims. However, she did claim to always pay her bills on time and asserted this had been true since she came to California in 2000. But, when questioned about her bankruptcy in 2002/2003, Abdelhamid only answered a few questions and then refused to discuss the matter further. Abdelhamid refused to answer questions regarding her receipt of government assistance before the fire. Lynch cautioned that Abdelhamid's refusals to answer could be considered by FIE in coming to a decision on her claim.

## D. *Denial of Claim and Subsequent Events*

After the EUO's, Lynch concluded Abdelhamid's "failure to provide documentation reasonably requested and which should be reasonably available and further [her] failure to answer even basic questions with respect to her finances . . . constitute[] material policy breaches." Specifically, Lynch concluded Abdelhamid's failure to produce requested documentation and her refusal to answer questions during her EUO breached a condition precedent to her recovery under the policy. Lynch concluded Abdelhamid had also failed to comply with the condition of the policy that required her to submit a complete and conforming proof of loss. In addition, Lynch opined Abdelhamid's failure to cooperate was an independent basis for denying the claim. Lynch recommended FIE deny Abdelhamid's claim on these grounds. She recommended FIE reserve its right to deny the claim based on concealment or fraud.

In January 2006, FIE formally denied Abdelhamid's claim in its entirety based on the four grounds outlined by Lynch and reserved its right with respect to concealment or fraud. In its letter denying Abdelhamid's claim, FIE made the following statement: "If you believe our analysis or decision is incorrect, or if you wish for us to consider additional information or

documentation, please forward a written statement as to the basis for your position and any additional information or documentation you wish for us to consider. Rest assured that all information or material you provide will be given careful consideration."

In February 2006, Ranciato responded to FIE disagreeing that Abdelhamid had either breached the insurance contract or failed to cooperate. He asserted: "We have both additional information and documentation that may resolve the coverage issue." He promised to submit an updated proof of loss, a detailed repair estimate and a detailed loss inventory by the end of the month.

Ranciato subsequently submitted (1) a notarized proof of loss form, (2) a dwelling repairs report apparently prepared on November 16, 2005, (3) a repairs report for other structures apparently prepared on the same November date, (4) a loss inventory report, (5) a receipt for an oriental rug, (6) a copy of Abdelhamid's ex-husband's 2005 federal tax form (Schedule C) for the operation of a Sacramento restaurant, (7) an unsigned copy of the 2005 joint federal tax return filed by Abdelhamid and her ex-husband, (8) partial copies (the right side cut off) of two pages of a bank account statement for Abdelhamid, (9) copies of cellular telephone bills for dates prior to the fire, but not covering the requested 24-hour period before and after the fire, (10) a letter from Abdelhamid's ex-husband's lender confirming the loan on the Elk Grove home had been paid off along with a copy of the loan documents, (11) the Sacramento County Fire Investigation Report, (12) a CD-ROM of photographs of the fire damage, and (13) a prefire video of the home taken by Abdelhamid.

Lynch forwarded all of the documentation to FIE, while reserving FIE's rights and defenses and expressly stating the insurer did not waive any previous or existing policy breaches by Abdelhamid. FIE authorized Lynch to conduct a second EUO based on the new information, even though Lynch expressed the opinion that the documents provided were not all of the materials requested.

Neither Abdelhamid nor Ranciato responded to FIE's request for a second EUO until the middle of May 2006 when Ranciato wrote to advise FIE that Abdelhamid had a new attorney and that the request for an additional EUO should be addressed by him.

In June 2006, Lynch responded to several letters received from a third attorney for Abdelhamid. Among other things, Lynch confirmed FIE's denial of Abdelhamid's claim effective January 2006 and that the basis for the denial

was not arson, but Abdelhamid's refusal to cooperate with FIE's investigation. FIE's request for a second EUO went unanswered.

Abdelhamid filed suit against FIE, ultimately alleging, in a second amended complaint, causes of action for breach of contract, breach of the duty of good faith and fair dealing, bad faith denial of claim, and unfair business practices.

## DISCUSSION

### I

### Standard of Review

Although Abdelhamid asserts on appeal that the trial court erred in granting summary judgment, and requests the judgment be overturned in its entirety, she argues errors only in the trial court's grant of summary adjudication of her first cause of action for breach of contract. She does not dispute FIE's understanding of her appeal as raising no separate issues regarding her causes of action for bad faith or unfair business practices. We similarly understand the appeal and, therefore, limit our review only to whether the trial court properly granted summary adjudication of Abdelhamid's breach of contract claim.

The standard of review for a trial court's decision to grant summary adjudication is well established. "A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).) A moving defendant has met its burden of showing that a cause of action has no merit by establishing that one or more elements of a cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (*o*).) "Once the defendant meets this burden, the burden shifts to the plaintiff 'to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto,' supported by evidence of specific facts and not mere allegations of the pleadings. [Citations.]" (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 160 [89 Cal.Rptr.3d 495], quoting Code Civ. Proc., § 437c, subd. (p)(2).)

We independently review an order granting summary adjudication. (*Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 87 [50 Cal.Rptr.3d 266].) In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which

objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. (c); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) "[W]e strictly construe the moving party's evidence and liberally construe the opposing party's evidence." (*Sababin v. Superior Court, supra*, at p. 88.)

## II

### The Trial Court Did Not Err in Granting Summary Adjudication of Abdelhamid's Breach of Contract Cause of Action

■ "The standard elements of a claim for breach of contract are '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. [Citation.]' [Citation.]" (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178 [80 Cal.Rptr.3d 6].) FIE sought and obtained summary adjudication of Abdelhamid's breach of contact cause of action on the ground that Abdelhamid could not prove the second element, that is, that she could not prove she had performed the conditions precedent for coverage under the insurance contract. She had therefore materially breached her obligations under the insurance contract.

### A. *Abdelhamid's Proof of Loss*

Abdelhamid's insurance contract with FIE expressly listed a number of "conditions" for coverage, including a number of the insured's "duties after loss." As relevant here, the contract provided that "[i]n [the] case of a loss to which this insurance may apply, you shall see that the following duties are performed: [¶] . . . [¶] (e) submit to us, within 60 days after we request, your signed sworn statement of loss which sets forth, to the best of your knowledge and belief: [¶] . . . [¶] (5) specifications of any damaged building and detailed estimates for repair of the damage; (6) an inventory of damaged personal property . . . ; (7) receipts for additional living expenses incurred and records supporting the fair rental value loss."

Abdelhamid contends the trial court's "first error stems from the *disputed facts* that [FIE's] duty to perform under the Policy was never triggered because [Abdelhamid] did not fulfill her condition precedent by failing to provide a conforming proof of loss." (Original italics.) Abdelhamid claims she did comply by submitting a proof of loss with each and every line filled out and that she submitted a further proof of loss after she obtained further

information. She claims an error of "disputed law" was committed by the trial court because "[a]s a matter of law, substantial performance may be achieved by making a legitimate effort under the circumstances to provide a proof of loss form[]" and "by most standards, her preparation and submittal of the Proof of Loss would rise to the level of *substantial performance*, thereby triggering [FIE's] duties under the insurance contract." (Original italics.) Her argument is without merit.

The evidence before the trial court shows FIE requested Abdelhamid submit a proof of loss in August 2005. Abdelhamid submitted a proof of loss within the required 60 days from the request, but contrary to her assertion on appeal, she did not fill out "each and every line." The line that asked the insured to state his or her residence at the time of loss was left blank. This was not an inconsequential omission. Abdelhamid's current address was necessary for communication purposes. It was also basic to FIE's evaluation of her claim for additional living expenses and fair rental value. Although FIE learned where Abdelhamid had been living since the fire and obtained some information regarding her expenses at Abdelhamid's EUO, there is nothing in the record to show Abdelhamid ever supplied documentation to support her statements.

Moreover, the proof of loss submitted by Abdelhamid contained an estimated value of loss for only the house, leaving all other claimed losses "to be determined." Abdelhamid did not submit, as required with her proof of loss, the required specifications of the damaged buildings, detailed estimates of repair, inventory of damaged personal property, and receipts and records supporting her additional living expenses. Whatever justification there may have been for this initially, there is no reason apparent in the record for Abdelhamid's failure to update the proof of loss and provide the required supporting documentation by the time of her EUO in November, as her public adjuster promised. In fact, the record shows repair reports for her house and other structures were prepared at the time of her EUO, but were not submitted to FIE until late February 2006, after its denial of her claim. And even when these documents were submitted in 2006, Abdelhamid still did not supply documentation supporting her claims for additional living expenses.

The deficiencies in Abdelhamid's proof of loss were a far cry from minor defects and no reasonable trier of fact could conclude she substantially performed her obligations or complied with the condition of her insurance contract requiring her to provide a proof of loss with supporting documenta-

tion. (Cf. *McCormick v. Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030, 1046 [200 Cal.Rptr. 732].)

B.  *Advice of Counsel As an Excuse for Abdelhamid's Failure to Answer Questions at Her EUO and Failure to Supply Requested Documents*

One of Abdelhamid's other contractual duties after a loss was to "(d) [¶] . . . [¶] (2) provide [FIE] with records and documents we request and permit us to make copies; and (3) submit to examination under oath and subscribe the same."

■  "An insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy." (*Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 587 [10 Cal.Rptr.3d 661] (*Brizuela*), citing *Hickman v. London Assurance Corp.* (1920) 184 Cal. 524, 534 [195 P. 45] (*Hickman*).) "[A]n insured materially breaches an insurance policy by failing to submit to an examination under oath, as often as may reasonably be required, *or failing to answer material questions.*" (13 Couch on Insurance (3d ed. 2005) § 196:24, p. 196-32, italics added & fns. omitted.) A "refusal of the insured to answer material questions at an examination under oath (provided for in the policy), shows a failure to give to the insurer that degree of cooperation required by the provisions of the policy . . . , and is a violation of the agreement of the insured to submit to such examination under oath." (*Robinson v. National Auto. etc. Ins. Co.* (1955) 132 Cal.App.2d 709, 716 [282 P.2d 930].) Where the insurer has reason to suspect arson, it is relevant and material to inquire into the financial condition of the insured because an insurer is entitled to develop circumstantial evidence of the insured's involvement in the suspected arson. (13 Couch on Insurance, *supra*, § 196:11, p. 196-20 & cases cited in fns. 53 & 55.)

FIE's investigation of the Kincaid home fire legitimately led it to suspect Abdelhamid's responsibility for the fire, which both the local fire department and fire investigation company concluded was deliberately set. The fire department investigator considered Abdelhamid to be a suspect. FIE uncovered information that Abdelhamid (1) may have paid too much for the Kincaid property, (2) believed she had been defrauded into purchasing the home for the price she paid, (3) had been forced to carry three mortgages, amounting to sizeable monthly payments, for the five or six months prior to the fire, (4) had paid a large sum of money upfront to contractors for a remodel that could not progress because of the failure to obtain permits, resulting in a stop notice from the city, (5) had been unable to get the contractors to complete the remodel or return her money, (6) knew asbestos

had been uncovered during the remodel work, (7) had paid $4,000 to a gardener to clear trees and brush away from the house just two days prior to the fire, and (8) had called FIE's agent for the first time two days before the fire to make a change in the mortgagee provisions and again the day before the fire to confirm the change. FIE learned that on the night of the fire, the house was unlocked and the normal outside light was turned off. FIE also learned Abdelhamid had filed bankruptcy a few years before the fire. At that time she had sizeable debt and minimal income. Her only income source was government assistance. Yet, just a couple of years later she was purchasing property for almost three quarters of a million dollars and paying tens of thousands of dollars for a remodel project. Abdelhamid's sole source of claimed income at the time of the fire was a new restaurant opened in 2004. Further, suspicion naturally arose when it appeared that her bankruptcy declarations conflicted with the terms of the property settlement in her subsequent divorce. In these circumstances, it was eminently reasonable for FIE to ask Abdelhamid to explain. It is undisputed Abdelhamid repeatedly refused to answer questions and supply documents regarding her personal and business finances. She errs in characterizing those inquiries as irrelevant. The questions and requested documents were very material and relevant.

██ Abdelhamid argues, however, that her reliance on the advice of counsel in refusing to answer FIE's questions and failing to supply requested documentation reasonably excused her failure to comply with the policy conditions requiring her to supply the requested documents and submit to an EUO. She relies on the following excerpt from 13 Couch on Insurance, *supra*, section 196:27, page 196-36: "Where compliance with an insurer's request for examination under oath is a condition precedent to recovery, the insured's failure to comply, *in the absence of a reasonable excuse*, breaches the policy and forfeits his or her right to recovery under the policy, and is a defense to an action on the policy." (Italics added & fns. omitted.) She contends it is at least an open question whether reliance on advice of counsel is such a reasonable excuse for a failure to comply with conditions of the policy. (See *California Fair Plan Assn. v. Superior Court* (2004) 115 Cal.App.4th 158, 166 [8 Cal.Rptr.3d 746] ["assuming" reliance on advice of counsel would amount to a reasonable excuse, no evidence established reliance]; *Brizuela, supra,* 116 Cal.App.4th 578, 590 [claim for policy benefits properly denied for failure to submit to EUO, quoting excerpt from Couch on Insurance].) She asks us to determine that "reliance on counsel is a reasonable excuse to refuse to answer questions at an examination under oath based on advice of attorney." Put another way, Abdelhamid essentially contends FIE was precluded from denying her claim based on her failure to

comply with the conditions of her policy because she relied on the advice of counsel in doing so. Not so.

First of all, we have grave reservations about the application of an "advice-of-counsel" excuse, whatever its possible parameters, under the circumstances of this case. Counsel for Abdelhamid was not present at the EUO. Instead, Abdelhamid and her public adjuster, Ranciato, represented to Lynch that Abdelhamid's refusal to answer questions and produce documents was based on advice of counsel. The only counsel named in the record was Kassenbrock; however, Lynch had previously been told Kassenbrock did not represent Abdelhamid in her insurance claim. Neither Abdelhamid nor Ranciato informed Lynch that Abdelhamid was represented by another attorney, and Lynch was precluded from either confirming or discussing the basis of the alleged advice with counsel because Ranciato had directed her not to have contact with Kassenbrock, so as not to run up Abdelhamid's attorney fees. On this record, we question the legitimacy of Abdelhamid's excuse.

Second, we further conclude the kind of advice-of-counsel excuse urged by Abdelhamid, independent of this problem, runs counter to case law and is inconsistent with statutory law.

In *Hickman, supra*, 184 Cal. 524, the insured and his employee were criminally charged with arson. (*Id.* at p. 526.) While the charges were pending, the insured appeared for an EUO, but refused to answer questions and produce documents on the advice of counsel that his answers could be used against him at his criminal trial. (*Id.* at pp. 527–528.) He asserted his constitutional right against self-incrimination. (*Id.* at pp. 531–532.) He offered to submit to an examination after the conclusion of the criminal prosecution. (*Id.* at p. 528.) The Supreme Court concluded the insured's refusal to submit to examination and to produce his books and papers on the ground of his constitutional immunity was not justified, as the constitutional privilege did not apply and his production of documents and examination was a "condition precedent" to his right to benefits under the policies. (*Id.* at pp. 532, 534.) The Supreme Court stated: " 'If the insured cannot bring himself within the terms and conditions of the policy he cannot recover. The terms of the policy constitute the measure of the insurer's liability. If it appears that the contract has been violated, and thus terminated by the assured, he cannot recover. He seeks to recover by reason of a contract, and he must show that he has complied with such contract on his part.' " (*Id.* at p. 534.)

*Subsequent cases have confirmed an insurer may contractually require*, as a condition of coverage, that an insured submit to an EUO and answer all

proper questions as part of the insurer's investigation of the insured's claim. (*Globe Indemnity Co. v. Superior Court* (1992) 6 Cal.App.4th 725, 730–731 [8 Cal.Rptr.2d 251]; *Robinson v. National Auto. etc. Ins. Co., supra,* 132 Cal.App.2d 709, 716; *West v. State Farm Fire & Casualty Co.* (9th Cir. 1988) 868 F.2d 348, 351.)

While these cases do not directly address the precise issue before us, they reflect a strong insistence on an insured's performance of the contractual conditions required for coverage, even when the insured might have a legitimate legal basis for not wanting to comply.

Furthermore, it is significant that the terms of a standard fire insurance policy in California have been prescribed by the California Legislature. (Ins. Code, §§ 2070, 2071.) A fire insurance policy, under the statutorily mandated form applicable in 2005 (Stats. 2003, ch. 148, § 2 [under the heading "Requirements in case loss occurs"] and continued in the policy form applicable at the present time (Ins. Code, § 2071, subd. (a) [same heading]), specifically provides: "The insured, as often as may be reasonably required . . . , shall . . . submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examinations all books of account, bills, invoices, and other vouchers, or certified copies thereof if the originals be lost, at any reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made." The statutory form also provides: "The insurer shall inform the insured that *tax returns are privileged* against disclosure under applicable law *but may be necessary* to process or determine the claim." (Ins. Code, § 2071, subd. (a); Stats. 2003, ch. 148, § 2, italics added.) Insurance Code section 2071.1 further provides, in pertinent part, that with respect to the standard policy " '[r]equirements in case loss occurs' " and specifically "[i]n an examination under oath, *an insured may assert any objection* that can be made in a deposition under state or federal law. *However, if as a result of asserting an objection, an insured fails to provide an answer to a material question, and that failure prevents the insurer from being able to determine the extent of loss and validity of the claim, the rights of the insured under the contract may be affected.*" (Ins. Code, § 2071.1, subd. (a)(6), italics added.)

█ Thus, the California Legislature has specifically recognized an insured's right to withhold information on the basis of privilege or other legal objection. But, it has also recognized such information may be necessary to the insurer's investigation of the claim and, where the failure prevents the insurer from being able to determine the validity of the claim or extent of loss, the Legislature has acknowledged the insured's rights under the contract may be affected. The Legislature has placed that risk on the insured. For us to

now adopt a rule that excuses insureds from complying with the statutorily mandated and contractually required preconditions for coverage after a loss because they assert a privilege or an objection relying on the advice of counsel would undermine this statutory scheme. Indeed, given that assertions of privilege and/or legal objections to questions at an EUO or to an insurer's request for documents are normally made on the advice of counsel, we would essentially be contradicting these statutes. We will not do so.

Abdelhamid's purported reliance on the alleged advice of counsel in refusing to answer FIE's questions and failing to supply requested documentation did not excuse her failure to comply with the policy conditions requiring her to supply the requested documents and answer material questions at her EUO. FIE properly denied coverage on the basis that her failure to comply constituted material breaches of her contractual duties.

C.  *FIE's Offer to Consider Additional Information in Its Denial Letter*

In January 2006, FIE formally denied Abdelhamid's claim in its entirety based on Abdelhamid's (1) failure to produce requested documentation, (2) failure to answer material questions when she was examined under oath, (3) failure to submit a completed proof of loss with necessary documentation, and (4) failure to cooperate in the processing of her claim. In its letter denying Abdelhamid's claim, FIE made the following closing statement: "If you believe our analysis or decision is incorrect, or if you wish for us to consider additional information or documentation, please forward a written statement as to the basis for your position and any additional information or documentation you wish for us to consider. Rest assured that all information or material you provide will be given careful consideration."

In response to this statement, Ranciato submitted various documents on Abdelhamid's behalf. Lynch acknowledged the receipt of the documents in a letter to Ranciato, but reserved FIE's rights and defenses and expressly stated FIE did not waive any previous or existing policy breaches by Abdelhamid.

FIE authorized Lynch to conduct a second EUO based on the new information, even though Lynch expressed the opinion that the documents provided were not all of the materials requested. However, neither Abdelhamid nor Ranciato responded to her request for a second EUO until the middle of May 2006 when Ranciato wrote to advise her that Abdelhamid had a new attorney and that the request for an additional EUO should be addressed by him. Ranciato also indicated the additional documentation was "somewhat self explanatory[]" and that "[t]he initial exam under oath should have addressed most of your questions . . . two days of questioning seems more than sufficient."

In June 2006, Lynch responded to several letters received from a third attorney for Abdelhamid. Among other things, Lynch confirmed FIE's denial of Abdelhamid's claim effective January 2006, and that the basis for the denial was Abdelhamid's refusal to cooperate with FIE's investigation. Lynch suggested counsel review the matter and, if he decided to pursue the matter, she requested he advise her as to what additional documentation would be submitted so that the documents could be reviewed before a second EUO. In a subsequent letter, Lynch again left it to Abdelhamid and her counsel what material, if any, to submit, but expressed the need for the documentation before proceeding with any EUO. It does not appear that any further documentation was submitted. No further EUO was taken.

In ruling on FIE's motion for summary adjudication of Abdelhamid's breach of contract claim, the trial court concluded the "additional documents submitted by plaintiff were insufficient to justify reversing the denial[]" and that "FIE did not have an obligation to take a second EUO, where plaintiff was in default and refused to answer questions concerning her finances."

On appeal, Abdelhamid argues FIE's denial letter requested additional documentation to assist FIE in its evaluation of her claim and that, by such request, FIE "clearly *reopened* the door to its obligations and duties under the Policy." (Original italics.) Abdelhamid points out that she did provide additional documentation. She claims there are disputed factual issues relating to her submission and that the trial court erred in ruling the additional documents were insufficient to justify reversing the denial of coverage and that FIE did not have an obligation to take a second EUO. We reject Abdelhamid's claims.

Nothing in FIE's January 2006 denial letter suggests its denial was preliminary or contingent or that FIE was continuing to evaluate Abdelhamid's claim. FIE did not "request" any additional documentation. The letter simply acknowledged that Abdelhamid might disagree with FIE's conclusions and denial. FIE offered to consider any additional documentation Abdelhamid would choose to submit. FIE did not "reopen" the door to its obligations and duties under the policy by making this offer.

Abdelhamid chose to submit, through Ranciato, a number of documents. However, a review of those documents reveals that most of them were available prior to FIE's denial of her claim; they were submitted without explanation for the failure to produce them earlier; many of them were incomplete documents; and, with the exception of the unsigned 2005 tax documents, Abdelhamid had still failed to provide the documents originally and repeatedly requested regarding her personal and business finances. Abdelhamid submitted no documents supporting her claims for contents loss

(other than one receipt for an oriental rug) or her claim for additional living expenses and fair rental value. Even the telephone records submitted failed to cover the requested time period before and after the fire. Abdelhamid, through Ranciato, expressed the belief that these documents were "self explanatory" and that a further EUO was unnecessary because she had already been sufficiently questioned for over two days. We agree with the trial court that, as a matter of law, these "additional" documents did not require FIE to reverse its denial of coverage. Unquestionably, Abdelhamid was still failing to produce all requested documentation and was continuing to be uncooperative in FIE's investigation of the validity and extent of her claim. FIE had no reason to set a second EUO without Abdelhamid's cooperation in fully submitting all material documentation necessary for its investigation.

### D. *"Substantial" Prejudice*

Citing to cases involving a third party claim against an insurer (*Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303, 305 [32 Cal.Rptr. 827, 384 P.2d 155]; *Allstate Ins. Co. v. King* (1967) 252 Cal.App.2d 698, 706 [60 Cal.Rptr. 892]), Abdelhamid contends that in an insured's action against the insurer, the insurer must demonstrate "substantial" prejudice resulting from the insured's alleged breach of conditions before it may properly deny coverage. We need not decide whether this is so because it is clear FIE was prejudiced in its investigation of Abdelhamid's claim because of her breach of the contract. The record firmly establishes FIE was substantially prejudiced by Abdelhamid's failure to produce documentation, failure to answer material questions, failure to submit a complete proof of loss with supporting documentation, and refusal to cooperate. The documentation FIE sought with respect to Abdelhamid's claimed losses was essential to a determination of the extent of her claim. FIE's requested documentation and queries regarding her financial status were, however, even more fundamental. The financial information FIE sought went to the heart of its investigation of whether there was circumstantial evidence of Abdelhamid's involvement in the arson of her home or whether there was a reasonable explanation for the many suspicious circumstances uncovered by FIE's investigation. This addressed the very validity of her claim.

In conclusion, our independent review establishes that summary adjudication of Abdelhamid's breach of contract action was properly granted. FIE showed Abdelhamid did not comply with the conditions precedent for coverage and had materially breached her obligations under the insurance contract. Abdelhamid failed to submit evidence showing there was any triable issue of material fact regarding her compliance or breach.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent. (Cal. Rules of Court, rule 8.278(a)(1).)

Hull, Acting P. J., and Robie, J., concurred.