Filed 11/8/24  Hughes v. Farmers Insurance Exchange CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ERIN HUGHES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>    Defendant and Respondent. | B331168<br>(Los Angeles County Super. Ct. No. 22VECV00053) |

---

        APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Jr. Judge.  Affirmed.

        Law Office of Aleksandr Gruzman and Aleksandr Gruzman for Plaintiff and Appellant.

        Tharpe & Howell and Eric B. Kunkel for Defendant and Respondent.

————————————

Plaintiff and appellant Erin Hughes appeals from the grant of summary judgment in favor of defendant and respondent Farmers Insurance Exchange (Farmers) on her causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, arising out of Farmers' denial of Hughes's property insurance claim. She also challenges the court's denials of her motion for a continuance and subsequent motion for new trial. We affirm, concluding summary judgment was properly granted based on Hughes's failure to comply with her duty under the insurance policy to participate in an examination under oath.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Hughes's Property Insurance Claim*

Hughes is the owner of real property in Malibu (the property). In December 2020, Hughes obtained an insurance policy to cover the property for fire loss through the California FAIR Plan Association (FAIR Plan). Also in December 2020, Hughes obtained a homeowner's insurance policy from Farmers to cover perils other than fire, including losses due to theft (the policy). The policy provided coverage for personal property up to $662,750 and another $30,000 in scheduled personal property coverage.

One month later, in January 2021, the property sustained significant fire damage. Hughes contacted Farmers, which advised her that fire loss was not covered by her Farmers policy, and she would have to pursue any such claim through her FAIR Plan policy. Soon afterwards, on January 21, 2021, Hughes tendered a theft claim under the Farmers policy, asserting in excess of $2 million worth of personal property was stolen from the property. Farmers ultimately denied the claim on January 5,

2022, on the ground that Hughes failed to cooperate with Farmers' investigation, including by failing to participate in a second examination under oath as required by the policy.

B.    *Hughes's Complaint Against Farmers*

One week after the denial of her claim, Hughes sued Farmers, alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Hughes alleged these claims arose from Farmers' "unreasonable and wrongful delay of insurance benefits due to [her] as a result of the theft of her personal property." Hughes asserted she had provided "all documents supporting her claim such as invoices, witness statements and photographs early in 2021," but Farmers demanded "duplicative, onerous and/or unnecessary" documentation of stolen items. Further, she alleged Farmers subjected her to "two confrontational, accusatory and grueling examinations under oath." Hughes alleged her second examination under oath had been "suspended due to [her] medical condition," but Farmers disregarded her condition and demanded a third examination. She alleged she incurred losses of at least $2 million as well as emotional distress damages. Hughes further alleged that in addition to breaching the policy's terms, Farmers acted in bad faith in its dealings with her, despite knowing she had suffered severe emotional distress from the loss of her home in the fire.

C.    *Farmers' Motion for Summary Judgment*

In December 2022, Farmers moved for summary judgment or in the alternative summary adjudication, contending it properly denied Hughes's theft claim based on her failure to cooperate with Farmers' investigation of her claim as well as her

3

material misrepresentations in obtaining the Farmers policy.[1] Farmers asserted Hughes's cooperation with the investigation, including sitting for examinations under oath, was a material obligation that Hughes owed under the policy terms and that she failed to perform. Her failure to comply constituted a material breach of her contractual duties, according to Farmers, and thus Farmers owed no benefits to Hughes under the policy. Farmers also contended Hughes's cause of action for breach of the implied covenant of good faith and fair dealing failed "because bad faith does not exist where no policy benefits are owed."

Farmers proffered evidence in support of its motion showing the following:

The policy lists specific "duties after loss" for which Hughes was responsible. As pertinent here, the policy states "[i]n case of covered loss or damage to property, it is your responsibility to: . . . (c) make a list of all damaged or destroyed personal property showing in detail the quantity, description, actual cash value, replacement cost, age and amount of loss. Attach all bills, receipts and related records that support your figures; (d) cooperate with our investigation of the loss . . . ; . . . [and] (e) as often as we reasonably require . . . provide us with records, documents and other information we may request . . . [and] submit to examinations under oath at such times and places as we reasonably designate." The policy further provides that

---

[1] Because we affirm the grant of summary judgment on the ground that Hughes did not perform her obligation under the policy to cooperate with Farmers' investigation, we do not address the facts or arguments relevant to Farmers' alternative basis for summary judgment—that Hughes made material misrepresentations in her application for the policy.

4

"submission to a requested examination(s) under oath is a condition precedent to recovery in this policy."

In May 2021, as part of Farmers' theft claim investigation, Hughes participated in an examination under oath. During the examination, Hughes's counsel informed the Farmers attorney he had just sent more than 40 additional receipts that the attorney would be receiving shortly. Recognizing they would not have time to go through the new items that day and the examination would need to continue on a future date, the Farmers attorney proposed "continu[ing] to work with one another to identify what's missing." In response, Hughes and her counsel agreed, with Hughes stating she would be happy to get "every single thing that you need and I'll send it to my attorney right away."

Thereafter, Farmers continued to communicate with Hughes regarding the status of her claim. In August 2021, Farmers sent Hughes a letter inquiring about "previously requested supporting photos" as well as a "full, final, complete" list of claimed inventory that included "a complete description of the item, the date of purchase, place of purchase, and the approximate purchase amount." In September 2021, Farmers sent a letter informing Hughes that it still needed the date of purchase for 30 items on her inventory list, as well as explanations on nearly 40 other items. Four weeks later, Farmers sent a letter informing Hughes that it was still awaiting the information.

In October 2021, a second session of the examination under oath was held regarding documentation Hughes had produced during and after the first session. Hughes appeared remotely with counsel, but the transcript of the examination shows that at the outset, before any questions were asked of her, she objected to

a further examination.  Hughes's counsel asserted the examination was in "bad faith" based on the absence of a "second examination provision" in the policy.  Counsel stated Hughes "already provided [a] full examination" and "all of the documents were provided there as well."  Counsel described Hughes as having "developed severe health issues involving post-traumatic stress disorder, as well as panic attacks" as a result of the investigation.  For her part, Hughes accused the Farmers attorney of interrogating her "like a fucking criminal" and stated, "if you want to take my deposition . . . you are going to take a second deposition in court, and that's going to be a formal deposition."  Hughes's remote connection then cut out, and her counsel indicated she would not proceed with the examination.

In October and November 2021, Farmers sent letters informing Hughes its investigation was still ongoing "pending completion of the examination under oath."

In January 2022, Hughes demanded payment on the theft claim.  In response, Farmers informed Hughes that it was denying coverage based on her failure to cooperate with Farmers' investigation and particularly her refusal to proceed with the second examination under oath.  Farmers indicated it "remain[ed] willing to reopen this claim" if Hughes cooperated with the investigation, including a further examination under oath.

D.    *Hughes's Opposition to Motion for Summary Judgment*

Hughes submitted her own declaration in support of her opposition to the motion for summary judgment.  In relevant

6

part, she asserted that from May 20 through May 23, 2021,[2] her attorney sent a list of missing items to an attorney for Farmers, Victor Ng, "along with fire lapd reports, as well as my utility bills, invoices for missing items and other documents requested by Farmers. These documents included invoices that were sufficient to show that the value of the missing property exceeded the property limits and I was entitled to benefits." On May 25, 2022, the date of the first session of her examination under oath, her attorney sent additional copies of invoices and photos requested by Farmers. She asserted, "Mr. Ng wasted the majority of the examination on irrelevant questions, refused to consider the documents provided to him and complete my examination. Furthermore, I was not provided an interpreter for this examination, despite the fact that English is my second language and I was often confused by the misleading and vague questions of Mr. Ng."

Hughes also declared that on July 9, 2021, she provided a "signed Proof of Loss" to Farmers, and "[a]ll the alleged missing receipts or documents in my possession were provided to Farmers." She also provided Farmers "the contact information for the vendors of the missing items" and asserted one of those vendors was interviewed by Farmers and corroborated Hughes's claims.

Hughes further declared, "On or about October 27, 2021 the attorneys for Farmers took a second Examination under Oath which involved further harassment from Farmers and caused me to experience a posttraumatic stress disorder symptoms requiring

---

[2] The declaration states the year was 2022, but that appears to be a typographical error.

medical treatment." Subsequently, Farmers "wrongfully and intentionally denied my claim despite having all necessary documents to adjudicate my claim and in furtherance of a scheme to annoy, harass and humiliate me."

Hughes's attorney Aleksandr Gruzman also provided a declaration repeating verbatim Hughes's assertions about the materials provided to Farmers in May and July 2021, and Hughes's claims that Ng "wasted the majority of the [first] examination on irrelevant questions [and] refused to consider the documents provided to him and complete his examination," and that the second session of the examination under oath "involved further harassment from Farmers."

E.    *Trial Court's Grant of Summary Judgment and Denial of Hughes's Continuance Request and Motion for New Trial*

In February 2023, after a hearing, the trial court granted summary judgment in favor of Farmers. Noting an insurer has "an absolute right" to require the insured to submit to an examination under oath "as long as the insurer exercises the right reasonably," the court determined Hughes had not shown Farmers acted unreasonably. The court found that at the first session of the examination under oath Hughes "agreed to come back a second time because she had produced a number of documents at the EOU [examination under oath] that [Farmers] needed to review. At the second EOU [Hughes] immediately acted hostile and accused [Farmers] of treating her like a 'fucking criminal' before the questioning had even begun. That [Hughes] was suffering from post-traumatic stress disorder does not mean that [Farmers] acted in bad faith. It is worth noting that when [Hughes] was informed her fire claim was not covered under the policy she changed her claim to a theft claim that apparently

8

happened about the same time as the fire. It is understandable that the insurer would closely scrutinize the claim." The court found Hughes had not raised a triable issue of fact as to whether she refused to cooperate. Because such a refusal forfeited any rights under the policy, the court entered judgment in Farmers' favor on both the breach of contract and implied covenant causes of action.[3]

In one paragraph in her opposition to the motion for summary judgment, Hughes requested a continuance of the hearing on the motion under Code of Civil Procedure section 473c, subdivision (h), "due to inability to conduct discovery." Hughes asserted her attorney would imminently be taking the deposition of her insurance agent, Maritza Hartnett, "which will show [Hartnett's] misrepresentations in the insurance application and not by Plaintiff." In addition, Hughes stated she "must be allowed to take the deposition of [Farmers'] Persons Most Knowledgeable to show none of the facts they claim constituted breach of the policy or a material misrepresentation." The supporting declaration from Hughes's counsel repeated a similar two-sentence request. The trial court denied the request.

Thereafter, Hughes unsuccessfully moved for a new trial on the grounds of "newly discovered evidence" and "insufficient evidence for summary judgment," as well as "irregularity in the proceedings" and "error in law" in connection with the court's denial of a continuance. Hughes pointed to new evidence from the recent depositions of her insurance agent and a senior

---

[3] The court found Hughes also failed to show a triable issue of fact as to whether she breached the policy by making material misrepresentations in her application for insurance, such that Farmers was entitled to deny the claim.

9

underwriter for Farmers that Hughes contended raised triable issues as to whether there was any concealment or misrepresentation by Hughes in her application for insurance.

In its ruling on the motion for new trial, the trial court determined Hughes's new evidence indeed "presented a triable issue of fact on the misrepresentation issue." However, the court found the new evidence did not pertain to the "separate basis" for granting summary judgment—Hughes's failure to cooperate with Farmers' investigation, specifically by failing to participate in a further examination under oath. The court concluded summary judgment was appropriate "based solely on failure to cooperate."

Hughes timely appealed from the judgment entered in Farmers' favor.

## DISCUSSION

A. *Breach of Contract and Implied Covenant Claims*

1. *Summary judgment standard and standard of review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; Code Civ. Proc., § 437c, subds. (c) & (f).) We review a ruling on summary judgment de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) In so doing, we " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'" (*Ibid.*)

"A defendant may bring a motion [for summary judgment] on the ground the plaintiff cannot prove one of the required elements of the case or there is a complete defense to the action." (*Luebke v. Automobile Club of Southern California* (2020)

10

59 Cal.App.5th 694, 702; see Code Civ. Proc., § 437c, subds. (o)(1), (2) & (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) "To carry its initial burden when the motion is directed to the plaintiff's case rather than an affirmative defense, a defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action." (*Luebke*, at p. 702.) "Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.' " (*Id.* at pp. 702-703; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) "The plaintiff must produce ' "s*ubstantial*" ' responsive evidence sufficient to establish a triable issue of fact." (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.)

### 2. *Breach of contract claim*

Hughes alleged Farmers breached the terms of the policy by unreasonably delaying and thereafter refusing to compensate Hughes for a covered loss. The trial court properly concluded there was no genuine dispute that Hughes's failure to participate in an examination under oath constituted a material breach of the policy; accordingly, Farmers was excused from having to pay on Hughes's claim.

" 'The standard elements of a claim for breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." ' " (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 999 (*Abdelhamid*); accord, *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Farmers

11

contends Hughes cannot satisfy the second element requiring that she have performed her own contractual obligations under the policy.  Because the insured " 'seeks to recover by reason of a contract, . . . he [or she] must show that he [or she] has complied with such contract on his [or her] part.' " (*Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 587 (*Brizuela*); accord, *Hickman v. London Assurance Corp.* (1920) 184 Cal. 524, 534 (*Hickman*).)  " ' "If the insured cannot bring himself within the terms and conditions of the policy he cannot recover." ' " (*Brizuela*, at p. 587.)

" 'Examinations under oath are frequently conducted under circumstances where the loss is undocumented or suspect.' " (*Myasnyankin v. Nationwide Mutual Ins. Co.* (2024) 99 Cal.App.5th 283, 288, quoting Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2023) ¶ 6:289.3.) "The right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law." (*Globe Indemnity Co. v. Superior Court* (1992) 6 Cal.App.4th 725, 731.)

Hughes's policy with Farmers provided Hughes had a responsibility to cooperate with Farmers' investigation of her claimed losses and "as often as we reasonably require . . . submit to examinations under oath at such times and places as we reasonably designate."  Farmers proffered evidence that Hughes did not comply with this duty under the policy to submit to a requested examination under oath.  While she participated in the first session, she objected to further questioning before the second session could start and refused to allow Farmers to complete the examination.  Hughes accused the Farmers attorney of interrogating her "like a fucking criminal" and stated, "if you

12

want to take my deposition . . . you are going to take a second deposition in court, and that's going to be a formal deposition."

" '[A]n insured materially breaches an insurance policy by failing to submit to an examination under oath, as often as may reasonably be required.' " (*Abdelhamid*, *supra*, 182 Cal.App.4th at p. 1001.) "A 'refusal of the insured to answer material questions at an examination under oath (provided for in the policy), shows a failure to give to the insurer that degree of cooperation required by the provisions of the policy . . . , and is a violation of the agreement of the insured to submit to such examination under oath.' " (*Ibid.*) An insurer need not "show prejudice before denying policy benefits to an insured who has violated a policy provision requiring submission to an examination under oath." (*Brizuela*, *supra*, 116 Cal.App.4th at p. 590.) Rather, "the refusal to submit to such an examination causes a forfeiture of any rights under the policy." (*Ibid.*; see *Hickman*, *supra*, 184 Cal. at p. 530 [" 'When the insured refuses to be examined under oath, he will forfeit all right to recover.' "]; *Myasnyankin v. Nationwide Mutual Ins. Co.*, *supra*, 99 Cal.App.5th at p. 288 [" ' "An insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy." ' "]; *Brizuela*, at p. 590 ["compliance with the policy requirement for an examination under oath is a condition precedent to any claim"]; accord *Abdelhamid*, at p. 1001.) Indeed, the policy here emphasized that "submission to a requested examination(s) . . . is a condition precedent to recovery in this policy."

Hughes contends, however, that Farmers' request for a second examination was unreasonable. "An insurer may conduct an examination under oath only to obtain information that is

13

relevant and reasonably necessary to process or investigate the claim." (Ins. Code, § 2071.1, subd. (a)(2).) "An examination under oath may only be conducted upon reasonable notice, at a reasonably convenient place and for a reasonable length of time." (*Id.*, subd. (a)(3).) Hughes's and her attorney's declarations state that the Farmers attorney "wasted the majority of the [initial] examination on irrelevant questions" and "refused to ask questions regarding the invoices and item photos provided to him instead demanding an additional examination." But the undisputed evidence shows only that Farmers was not able to complete the examination under oath during the first session because Hughes had not yet produced all the necessary documents for the claimed property loss. Hughes's attorney acknowledged as much during the transcribed examination, and he and Hughes agreed they would continue to work with Farmers to ensure Farmers had everything it needed. As the trial court correctly concluded, Hughes proffered no evidence to support her vague contention that Farmers asked "irrelevant questions" and no evidence to suggest Farmers acted unreasonably during the first session or in requesting a second session.

Moreover, while Hughes declared that the second session of the examination under oath "involved further harassment from Farmers and caused me to experience a posttraumatic stress disorder symptoms requiring medical treatment," the transcript shows Hughes immediately terminated the session before any questioning at all by the Farmers attorney. Hughes's conclusory allegation that she was subjected to "harassment" during this second session does not raise a triable issue, particularly when the transcript demonstrates exactly what transpired during that aborted examination. And while Hughes may have been

14

experiencing stress and hardship at the time on account of the fire and property loss, that does not demonstrate Farmers acted unreasonably. California law "reflect[s] a strong insistence on an insured's performance of the contractual conditions required for coverage, even when the insured might have a legitimate basis for not wanting to comply." (*Abdelhamid*, *supra*, 182 Cal.App.4th at p. 1004; see *Hickman*, *supra*, 184 Cal. at p. 534 ["Mere hardship or difficulty will not excuse a party from carrying out a contract; and, where one contracts to do any act which is possible, he is liable for a breach, even though circumstances arise, without his fault, making it difficult, or even impossible, for him to perform."].)

Contending English is not her first language, Hughes also asserts Farmers acted unreasonably by not providing an interpreter for her examination under oath. But Hughes does not offer any evidence that she ever requested an interpreter or otherwise informed Farmers of any language difficulty during either session of the examination.

Hughes's proffered evidence does not raise a triable issue as to whether Farmers acted reasonably in conducting the first session of the examination, attempting to hold the second session of the examination, or insisting Hughes return for further examination after she terminated the latter session at the outset. As the trial court suggested, it was reasonable to expect Farmers' close scrutiny given Hughes made a theft claim immediately after Farmers informed her that her significant fire loss was not covered under the policy.

Because Hughes refused to cooperate with Farmers' investigation by participating in and completing her examination under oath, she cannot establish her own performance under the

15

policy. Thus, summary judgment was appropriately granted on her cause of action for breach of contract against Farmers. (*Abdelhamid*, *supra*, 182 Cal.App.4th at p. 1007 [summary judgment properly granted for insurer where insurer showed plaintiff did not comply with the conditions precedent for coverage and had materially breached her obligations under the insurance contract, and plaintiff failed to submit evidence showing there was any triable issue of material fact regarding her compliance or breach]; *California Fair Plan Assn. v. Superior Court* (2004) 115 Cal.App.4th 158, 167 [directing trial court to enter summary judgment in insurer's favor where the insured failed to refute insurer's evidence that the insured refused to submit to an examination under oath].)

### 3. *Breach of Implied Covenant Claim*

The implied covenant of good faith and fair dealing is "based on general contract law and the long-standing rule ' "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." ' " (*Waller v. Trucker Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36.) "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." (*Ibid.*) In the context of a claim related to the denial of insurance benefits, " '[t]here are at least two separate requirements to establish [a] breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause.' " (*Mosley v. Pacific Specialty Ins. Co.* (2020) 49 Cal.App.5th 417, 436.) In other words, "a bad faith claim cannot be maintained unless policy

16

benefits are due," and "[w]here benefits are withheld for proper cause, there is no breach of the implied covenant." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151; see *Waller*, at p 36 [no breach of the implied covenant of good faith and fair dealing absent any potential for coverage under an insurance policy "because the covenant is based on the contractual relationship between the insured and the insurer"].)

As discussed, Farmers did not improperly withhold benefits because Hughes failed to comply with the policy term requiring her to participate in examinations under oath. As such, Hughes's claim for bad faith fails as a matter of law. (See *Love v. Fire Ins. Exchange*, *supra*, 221 Cal.App.3d at p. 1153.)

B.    *Hughes's Request for a Continuance*

Hughes asserts the trial court erred in denying her request for a continuance of the summary judgment hearing under Code of Civil Procedure section 437c, subdivision (h), which provides, "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just." Hughes sought a continuance to take the depositions of her insurance agent and Farmers' Persons Most Knowledgeable to show she did not make material misrepresentations in her insurance application. We review a ruling on a continuance motion or request under section 437c, subdivision (h), for abuse of discretion. (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038.)

The trial court did not abuse its discretion in finding the "barebones" declaration supporting Hughes's request for a

17

continuance failed to demonstrate "facts essential to justify opposition may exist" or to "establish good cause." (See *Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 643 [under section 437c, subd. (h), affidavit or declaration must show "(1) the facts to be obtained are essential to opposing the motion, (2) there is reason to believe such facts may exist, and (3) the reasons why additional time is needed to obtain these facts"]; accord, *Granadino v. Wells Fargo Bank, N.A.*, *supra*, 236 Cal.App.4th at p. 420.)

In any event, the sought-after discovery solely concerned the allegation that Hughes had made material misrepresentations in her insurance application and was not relevant to the issue of Hughes's noncompliance with the policy requirement that she participate in examinations under oath. Because the trial court granted summary judgment on the latter ground, providing Hughes more time to try to obtain facts irrelevant to that decision would have been futile.

C.    *Hughes's Motion for New Trial*

"A motion for a new trial is appropriate following an order granting summary judgment. [Citations.] This is so, even though, strictly speaking, 'summary judgment . . . is a determination that there shall be no trial at all.' " (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 858; accord, *Brewer v. Remington* (2020) 46 Cal.App.5th 14, 23.) "The determinations underlying the new trial order dictate our standard of review. [Citation.] To the extent the order relies on the resolution of a question of law, including the existence of triable issues of fact, we examine the matter de novo. [Citations.] To the extent the order relies on the assertion of newly discovered evidence, we

18

examine the order for an abuse of discretion." (*Doe v. United Air Lines, Inc.* (2008) 160 Cal.App.4th 1500, 1505.)

Before the trial court, Hughes moved for a new trial on the basis of irregularity in the proceedings, newly discovered evidence, insufficiency of the evidence, and error in law.  (Code Civ. Proc., § 657, subds. (1), (4), (6) & (7).)  On appeal, Hughes abandons two of these bases and in a few conclusory sentences argues the trial court erred in rejecting her arguments regarding newly discovered evidence and insufficiency of the evidence to support the grant of summary judgment.

Hughes's motion for a new trial presented no new evidence with respect to Hughes's cooperation or lack thereof with the required examinations under oath.  Accordingly, the trial court did not err in denying the motion on that ground.  (*Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 255 [no abuse of discretion in denying new trial motion where no new evidence presented].)  Further, because we find no error in the trial court's summary judgment ruling, we reject Hughes's unsupported contention that the evidence presented at summary judgment was somehow insufficient.  Accordingly, the trial court properly denied her Hughes's motion for a new trial.

## DISPOSITION

The judgment is affirmed.  Farmers is entitled to recover its costs on appeal.

STONE, J.

We concur:


MARTINEZ, P. J.                    SEGAL, J.

19