Filed 4/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| SANTA YNEZ BAND OF CHUMASH MISSION INDIANS OF THE SANTA YNEZ RESERVATION CALIFORNIA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY,<br><br>    Defendant and Respondent. | 2d Civ. No. B320834<br>(Super. Ct. No. 20CV01967)<br>(Santa Barbara County) |

Here we interpret an insurance contract that provides coverage for physical loss or damage to real or personal property. Experts disagreed whether the property was permanently damaged or altered by the COVID-19 virus landing on its surface.

We decide this is not a loss as provided in the insurance contract. Some courts have ruled the phrase "the COVID-19 virus has altered the property" to be sufficient as an allegation of property damage in cases involving demurrers. In a motion for summary judgment, however, the plaintiff must show the

alteration is so material that it caused specific economic damage to the property to make a sufficient property damage insurance claim.

The Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation California (Chumash) appeals a judgment following the granting of a motion for summary judgment in favor of Lexington Insurance Company (Lexington) in Chumash's lawsuit against Lexington for denial of insurance coverage. We conclude, among other things, that Chumash did not present sufficient evidence to show that the COVID-19 virus caused physical property damage to its casino and resort so as to fall within the property damage coverage provisions of the Lexington insurance policy. We affirm.

FACTS

The Chumash Casino and Resort (Casino and Resort) is a large business enterprise of Chumash open to the public. It consists of a 320-room hotel, a 145,000-square-foot "gaming floor," 2,500 video gaming machines, 50 table games, a poker room, and a bingo room. It includes four restaurants, a 325-seat buffet, a 125-seat café, a 145-seat food court, and a 125-seat "fine dining restaurant." It includes a 1,500-seat "multipurpose venue" known as "the Samala Showroom." The Casino and Resort employs "an average of 1,767 [employees]." It has recorded an "average 9,012 patrons per day on weekdays, and 11,392 per day on weekends."

In March 2020, Casino and Resort General Manager Bill Peters concluded that "the COVID-19 virus was present on and interacting with surfaces at the casino-resort." "By March 15, 2020, [Chumash] became aware of employees who were complaining of symptoms consistent with COVID-19."

2.

The Chumash business committee, a governing body of Chumash, promptly ordered the Casino and Resort "closed." The official Chumash tribal resolution regarding the closure stated COVID-19 "is causing physical loss or damage to property on or near tribal lands, including, without limitation, the Chumash Casino and Resort."

The Casino and Resort remained closed through June 10, 2020. Between the closure and reopening, Chumash made "repairs and upgrades" to its property. These included: 1) the installation of temperature check machines, 2) plexiglass barriers at "gaming machines and tables," and 3) barriers "between tables in employee break areas."

*The Insurance Policy*

Chumash had an insurance policy with Lexington providing for " 'All Risk' property damage coverage." The all risk clause provided: " 'Subject to the terms, conditions and exclusions stated elsewhere herein, this Policy provides insurance against all risk of direct physical loss or damage occurring during the period of this Policy.' " The policy contained "business interruption" coverage "[a]gainst loss resulting directly from interruption of business, services or rental value caused by *direct physical loss or damage*, as covered by this Policy to real and/or personal property insured by this Policy, occurring during the term of this Policy." (Italics added.)

The policy contained an "extra expense" provision "to cover the necessary and reasonable extra expenses occurring during the term of this Policy at any location as hereinafter defined, incurred by the Named Insured in order to continue as nearly as practicable the normal operation of the Named Insured's business following *damage to or destruction of covered property* by a

covered peril which is on premises owned, leased or occupied by the Named Insured."  (Italics added.)

The policy had an "interruption by civil authority" provision that provided:  "This Policy is extended to include the actual loss sustained by the Named Insured, as covered hereunder during the length of time, not exceeding 30 days, when as a direct result of *damage to or destruction of property* by a covered peril(s) occurring at a property located within a 10 mile radius of the covered property, access to the covered property is specially prohibited by order of a civil authority."  (Italics added.)

The policy also had a "protection and preservation of property" provision that provided, in relevant part:  "In case of actual or *imminent physical loss or damage* of the type insured against by this Policy, the expenses incurred by the Named Insured *in taking reasonable and necessary actions for the temporary protection and preservation of property* insured hereunder shall be added to the total physical loss or damage otherwise recoverable . . . ."  (Italics added.)

Duane Dowell, the Chumash director of risk management, declared, "[T]he Policy does not contain any provision which purports to exclude coverage for physical loss or damage due to viruses or pandemics."  He said Lexington first added a "communicable Diseases" exclusion provision in its next policy on July 1, 2020.

*Denial of the Claim*

Chumash made a claim with Lexington for "property damage to the Chumash Casino and Resort" due to the COVID-19 virus.  It claimed the damage rendered its facilities "unsafe and unusable."  The claim included the tribal closure order and "confirmation" that an employee "was infected with COVID-19

4.

prior to closure." (Boldface and underlining omitted.) Lexington denied the claim.

Chumash filed an action against Lexington alleging causes of action for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. Chumash filed a motion for summary adjudication. Lexington filed a cross motion for summary judgment claiming Chumash did not qualify for coverage because the Casino and Resort did not sustain property damage as a result of the COVID-19 virus.

To show property damage, Chumash relied on declarations from Lawrence Mayer, M.D., Ph.D., an academic researcher and professor, and Doctor Ivan Dmochoski, a research scientist and biochemist. Dmochoski said the "surfaces at the Chumash Casino and Resort were physically altered" because of the contamination from the COVID-19 virus. The "affected surfaces may be permanently altered." Mayer said it was "a statistical near-certainty that the virus was present at the Chumash Casino and Resort on and before March 15, 2020." (Boldface and underlining omitted.) He said the virus "physically altered the surfaces of the property and equipment at the Casino." (Boldface and underlining omitted.) As a result of the virus contamination, Chumash had to make physical alterations to its property to attempt to reopen it for the public. This included, among other things, the installation of over 1,000 plexiglass barriers and the reduction of seats at the casino.

Lexington's expert Doctor Alexis Sauer-Budge, a microbiologist, declared the virus cannot damage property surfaces and may be disinfected using standard disinfection methods.

5.

The trial court granted summary judgment in favor of Lexington.  It ruled, "As a matter of California law, COVID-19 does not cause 'direct physical loss or damage' to property."

## DISCUSSION

### Summary Judgment

"Summary judgment provides courts with 'a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' " (*San Jose Neurospine v. Aetna Health of California* (2020) 45 Cal.App.5th 953, 957.)  " ' "On appeal, the reviewing court makes ' "an independent assessment of the correctness of the trial court's ruling [regarding summary judgment], applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." ' " ' " (*Id*. at p. 958)  " 'Our task is to determine whether a triable issue of material fact exists.' " (*Ibid*.)  " '[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion.' " (*Ibid*.)

### Triable Issues of Fact

"[T]he threshold requirement for recovery under a contract of property insurance is that the insured property has sustained physical loss or damage." (*Simon Marketing, Inc. v. Gulf Ins. Co.* (2007) 149 Cal.App.4th 616, 623.)  "Physical damage" may include "physical alteration." (*Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 109 (*Marina Pacific*).)

A business may not generally claim property damage simply because it lost income or was required to shut down because of the COVID-19 virus.  But it may fall within the

6.

insurance property damage coverage provisions by showing the COVID-19 virus altered its property and caused physical damage. (*Marina Pacific*, *supra*, 81 Cal.App.5th at p. 101; *Brown Jug, Inc. v. Cincinnati Ins. Co.* (6th Cir. 2022) 27 F.4th 398, 403; *Los Angeles Lakers, Inc. v. Federal Ins. Co.* (C.D.Cal. 2022) 591 F.Supp.3d 672, 677 (*Los Angeles Lakers*).)

### *United Talent Agency*

Lexington cites *United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821 (*United Talent Agency*). There the court, quoting from a federal decision, said, " 'While the impact of the virus on the world . . . can hardly be overstated, its impact on physical property is *inconsequential*: deadly or not, it *may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on it own in a matter of days*.' " (*Id.* at p. 835, italics added.) Relying on another federal decision, it said, " '[T]he virus's *inability to physically alter* or persistently contaminate property differentiates it from radiation, chemical dust, gas, asbestos, and other contaminants whose presence could trigger coverage . . . .' " (*Id.* at p. 836, italics added.)

Lexington contends the federal decisions relied on in *United Talent Agency*, *supra*, 77 Cal.App.5th 821, and numerous other federal decisions, show, as a matter of law, that Chumash cannot prevail.

### *Federal Decisions*

Federal decisions may be persuasive, but California courts are not bound by the decisions of the lower federal courts. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.) Yet, even so, the federal courts are not completely in agreement on the impact of the virus. Lexington relies on statements about the

7.

inconsequential impact of the virus on business property that the *United Talent Agency* court quoted from some federal decisions.

But other federal courts have held the COVID-19 virus can damage business property, and its damage to businesses can be a covered loss under standard "loss or damage" provisions of business insurance policies. (*Brown Jug, Inc. v. Cincinnati Ins. Co.*, *supra*, 27 F.4th at p. 403 [complaint for damage coverage is sufficient where plaintiff alleges "COVID-19 was present" and it "materially altered all or part of the property"]; *Los Angeles Lakers*, *supra*, 591 F.Supp.3d at p. 677 [same].)

*Recent California Decisions*

Recent California decisions have departed from *United Talent Agency*, *supra*, 77 Cal.App.5th 821.

The theory relied on in *United Talent Agency* was rejected in *Marina Pacific*, *supra*, 81 Cal.App.5th 96. There *Marina Pacific* reversed the sustaining of a demurrer against a policy holder. It discussed the legal standard for factual proof for property damage insurance coverage involving COVID-19. It noted that the *United Talent Agency* court concluded "the COVID-19 virus does not damage property," but it did so "without evidence" to support its conclusion. (*Marina Pacific*, at p. 111.) The *United Talent Agency* court also declared its "general belief that surface cleaning may be the only remediation necessary to restore contaminated property to its original, safe-for-use condition." (*Marina Pacific*, at p. 111.) But, as the *Marina Pacific* court noted, "That was not always the understanding of the appropriate precautions to take with items potentially exposed to the virus." (*Ibid.*) Consequently, whether the virus caused property damage is determined by the evidence presented in each case. The *Marina Pacific* court said some federal courts

8.

had adopted a "common sense" theory that "COVID-19 does not physically alter the structure of property." (*Id*. at p. 114.) But instead of making such an assumption, the courts should "actually receive evidence" on that issue. (*Ibid*.)

Other California courts have also rejected the rule that the virus cannot cause damage. (*Inns-by-the-sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 710 (*Inns-by-the-sea*).) There the court said it did not follow the "across-the-board rule that a virus can *never* give rise to a " 'direct physical loss of or damage to property.' " (*Ibid*.)

In *Shusha, Inc. v. Century National Ins. Co.* (2022) 87 Cal.App.5th 250, 262-263, the court also rejected the *United Talent Agency* rule that the virus cannot cause physical damage to business property.

Moreover, in light of *Marina Pacific*, the Ninth Circuit has also recently questioned whether the *United Talent Agency* decision is currently consistent with California law. (*Another Planet Entertainment, LLC v. Vigilant Insurance Co.* (9th Cir. 2022) 56 F.4th 730, 733-734 [requesting certification to the California Supreme Court].)

*Chumash's Failure of Proof*

We do not take issue with recent California decisions holding that business plaintiffs may be able to show that the COVID-19 virus caused damage to their property so as to fall within the property damage provisions of a business insurance policy.

The issue here, however, is whether Chumash presented sufficient evidence to show that the virus *actually caused* physical damage *to its property*.

The coverage provisions of the Lexington policy require proof of physical damage to property. Alteration of business property is a factor that may fall within the coverage provisions of a property damage business insurance policy. (*Marina Pacific*, *supra*, 81 Cal.App.5th at p. 109.) But the alteration must cause physical damage for the business to be eligible for coverage under the Lexington policy. If there is alteration of property without physical damage, then there is no proof of an economic loss that can be compensated under the policy. The ordinary meaning of the term "physical damage to property" does not include a virus on the property.

Chumash contends its experts said the property had been physically altered. A plaintiff opposing a summary judgment motion involving a property damage coverage claim must 1) be able to present proof that the alteration of its property actually caused damage; 2) identify the specific property that had been damaged; 3) *and especially present proof whether that property had to be replaced or was no longer usable*; and 4) present evidence of the dollar amount of its loss. (See, e.g., *Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 1000.)

As Lexington notes, if the alteration of the Chumash property caused damage, then Chumash should have been able to show, for example, that its carpeting, gaming tables, gambling devices, and playing cards had to be replaced or could not be used again. But there are no such facts presented here. This is fatal to the Chumash claim.

The Casino and Resort's physical building structure remained intact and was not changed. Chumash employees worked there before, during, and after the shutdown. As Lexington notes, "[N]o property was repaired, rebuilt or

10.

replaced."  There was no showing of the type of damage that policyholders could reasonably expect to be compensated for, such as alteration causing damage by fire, flood, or by physical impact to the property.

Chumash claims it installed plastic barriers.  But that was to make the standard pandemic-related precautions that many businesses made to reopen to the public after a shutdown.  It is not proof that its property had been damaged.

Chumash notes that it shut down its property.  But it presented no evidence to show that the shutdown was for the purpose of repairing or replacing damaged items such as rugs, gaming tables, or gambling machines.  Those items remained intact before, during, and after the shutdown.  There was no showing that the virus impaired its gambling machines or that any other items of its property had been destroyed or damaged so they could not be used again.

A business may rely on experts to prove property damage.  But here the Chumash experts' declarations were not sufficient for that purpose.  They said that "surfaces at the Chumash Casino and Resort were physically altered."  But such general or conclusory statements do not suffice for a valid insurance claim.  The experts did not specifically identify which property was altered.  That is a fatal omission.  An insurance carrier could not be expected to investigate property damage without knowing what property to examine.  If a business, as here, is not able to *specifically identify* the property that was damaged:  1) it is not in a position to make an insurance claim, and 2) it is not in a position to prove its case or oppose summary judgment.

During the claim procedure, Lexington asked Chumash for additional information regarding its claim for coverage.  In

11.

response, the Chumash representative said, "Our claim is *more accurately* stated that *the business loss is due to the orders of the* state, local, and tribal civil authorities (which we have previously given you) and which were issued due to the ongoing pandemic." (Italics added.)

Had the Chumash Casino and Resort sustained property damage, it was required to *specify* what property was damaged and to submit a claim for the dollar amount of that loss. The absence of such information supports Lexington's decision to deny coverage.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded in favor of the respondent.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

James F. Rigali, Judge

Superior Court County of Santa Barbara

_____

Roxborough, Pomerance, Nye & Adreani, Nicholas P. Roxborough and Vincent S. Gannuscio for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Richard J. Doren, Matthew A. Hoffman, Daniel R. Adler, Katarzyna Ryzewska and Kenneth H. Oshita for Defendant and Respondent.