Filed 1/30/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VLADIMIR MYASNYANKIN, Plaintiff and Respondent, v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant and Appellant. | A166946 (Alameda County Super. Ct. No. 22-CV-011144) |
| VLADIMIR MYASNYANKIN, Plaintiff and Appellant, v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant and Respondent. | A167445 (Alameda County Super. Ct. No. 22-CV-011144) |

Residential property insurance policies commonly require an insured to submit to an examination under oath (EUO) if requested by the insurer in connection with the resolution of a claim. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2023) ¶ 6:289.) Insurance Code[1] section 2071.1, subdivision (a)(4), provides that an insured subject to an EUO "may record the examination proceedings in their entirety." We are

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

[1] All undesignated statutory references are to the Insurance Code.

presented with an issue of first impression: whether this provision entitles an insured to make a video recording of the insurer's participants in an EUO. After considering the statute's plain language, statutory framework, and legislative history, we conclude the provision does confer such a right. In the unpublished portion of this opinion, we resolve a dispute over attorney fees.

## BACKGROUND

The facts are not contested. Following water damage to his home, Vladimir Myasnyankin (Myasnyankin or plaintiff) filed a claim under his property insurance policy with Nationwide Mutual Insurance Company (Nationwide).[2] Pursuant to the policy terms, Nationwide required plaintiff to submit to an EUO, which was scheduled to be in person. Relying on section 2071.1, subdivision (a)(4) (hereafter section 2071.1(a)(4)), plaintiff sought to video record the entire proceeding, including Nationwide's attorneys and claims adjusters. Nationwide refused to proceed with the EUO, asserting section 2071.1(a)(4) only permitted plaintiff to video record himself. Further, Nationwide threatened to deny plaintiff's claim unless he agreed to proceed with the EUO. Plaintiff then sued Nationwide seeking a declaration of his rights under section 2071.1.

Nationwide filed a demurrer to the complaint on the grounds that neither the policy nor section 2071.1 vested plaintiff with the right to video record all participants at his EUO. Looking at the plain language of section 2071.1 and the legislative history, and examining the distinction between section 2071.1 and the rules of civil procedure regarding depositions (Code Civ. Proc., § 2025.330, subd. (c)), the trial court overruled Nationwide's demurrer. The trial court interpreted the phrase "record the examination

_____

[2] Nalini Kumar, a separate insured with a different claim subject to another policy, is no longer party to the action.

2

proceedings in their entirety" as including "video recording of the persons asking the questions, the person answering the questions, and any other aspect of the proceedings." At the trial court's suggestion, the parties entered a stipulated judgment in favor of Myasnyankin. Nationwide appealed the judgment (No. A166946). The trial court denied plaintiff's subsequent motion for attorney fees, and plaintiff appealed that order (No. A167445). We granted plaintiff's motion to consolidate the appeals for argument and decision.

## DISCUSSION

I.    *Demurrer Appeal*

"'An insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy.'" (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 1001 (*Abdelhamid*).) "Examinations under oath are frequently conducted under circumstances where the loss is undocumented or suspect." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2023) ¶ 6:289.3.) "The purpose of the examination under oath is to enable the insurer to obtain the information necessary to process the claim: ' "As the facts with respect to the amount and circumstances of a loss are almost entirely within the sole knowledge of the insured, ... it is necessary that it [the insurer] have some means of cross-examining, as it were, upon the written statement and proofs of the insured, for the purpose of getting at the exact facts before paying the sum claimed of it." ' " (*Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 591–592 (*Brizuela*).) "The examination is normally conducted orally before a court reporter who administers the oath and transcribes the proceeding." (Croskey at al., *supra,* ¶ 6:289.)

3

Section 2071.1, subdivision (a), applies to "any policy that insures property and contains a provision for examining an insured under oath," and enumerates a nonexclusive list of "rights of each insured who is requested to submit to an examination under oath."[3]  One such right is to "record the

[3] Section 2071.1, subdivision (a), provides, in its entirety: "This section applies to an examination of an insured under oath pursuant to Section 2071 labeled 'Requirements in case loss occurs' and other relevant provisions of that section [setting forth the standard form of fire insurance policy], and to any policy that insures property and contains a provision for examining an insured under oath, when the policy is originated or renewed on and after January 1, 2002.

"The following are among the rights of each insured who is requested to submit to an examination under oath:

"(1) An insurer that determines that it will conduct an examination under oath of an insured shall notify the insured of that determination and shall include a copy of this section in the notification.

"(2) An insurer may conduct an examination under oath only to obtain information that is relevant and reasonably necessary to process or investigate the claim.

"(3) An examination under oath may only be conducted upon reasonable notice, at a reasonably convenient place and for a reasonable length of time.

"(4) The insured may be represented by counsel and may record the examination proceedings in their entirety.

"(5) The insurer shall notify the insured that, upon request and free of charge, it will provide the insured with a copy of the transcript of the proceedings and an audio or video recording of the proceedings, if one exists. Where an insured requests a copy of the transcript, the recording, or both, of the examination under oath, the insurer shall provide it within 10 business days of receipt by the insurer or its counsel of the transcript, the recording, or both.  An insured may make sworn corrections to the transcript so it accurately reflects the testimony under oath.

"(6) In an examination under oath, an insured may assert any objection that can be made in a deposition under state or federal law.  However, if as a result of asserting an objection, an insured fails to provide an answer to a material question, and that failure prevents the insurer from being able to

examination proceedings in their entirety." (§ 2071.1(a)(4).) The parties agree the provision grants insureds the right to make an audio or video recording, but dispute *who* can be recorded on video. Plaintiff argues the statute entitles an insured to video record the insurance company's representatives, while Nationwide contends the provision only confers on insureds the right to video record themselves.[4]

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107.)

---

determine the extent of loss and validity of the claim, the rights of the insured under the contract may be affected.

"(7) An insured who submits a fraudulent claim may be subject to all criminal and civil penalties applicable under law."

[4] United Policyholders filed an amicus brief in support of plaintiff.

5

We begin with the plain language.  Section 2071.1 provides that "each insured who is requested to submit to an examination under oath . . . may be represented by counsel and *may record the examination proceedings in their entirety*."  (§ 2071.1(a)(4), italics added.)  "Entirety" is defined as "the state of being entire or complete;" "entire," in turn, is defined as "*with no element or part excepted.*"  (Merriam-Webster's Unabridged Dict. Online, <https://unabridged.merriam-webster.com/unabridged/entirety> & <https://unabridged.merriam-webster.com/unabridged/entire> [as of Jan. 22, 2024], italics added; see also Oxford English Dict. Online (2024) <https://doi.org/10.1093/OED/8031425223> [as of Jan. 22, 2024] [phrase "in its entirety" means "in its complete form, as a whole"].)  The plain language thus provides an insured may record *every element and part* of the examination proceeding.

"Examination proceeding" is also a broad term.  A different subdivision of section 2071.1 uses the term "testimony" to denote the insured's answers to questions.  (§ 2071.1, subd. (a)(5) ["An insured may make sworn corrections to the transcript so it accurately reflects *the testimony under oath*."  (Italics added)].)  " '[W]hen different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended.' "  (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 343.)  Thus, the use of "testimony" elsewhere in the same statute suggests that the Legislature intended the term "examination proceedings" to include more than just the insured's responses to questions.  Indeed, as plaintiff notes, a statute governing depositions expressly limits recording rights to "testimony."  (See Code Civ. Proc., § 2025.330, subd. (c) [party noticing deposition "may . . . record the *testimony* by audio or video technology" (italics added)].)  The insurer's representatives at an EUO are an

6

element or part of the examination proceeding, and therefore fall within the scope of the plain language.  This construction is supported by the statutory framework.  Section 2071.1, subdivision (a) provides a nonexclusive list of rights of insureds, indicating an obvious purpose to protect those subject to EUOs.[5]

To the extent the statutory language is susceptible to a different interpretation, the legislative history strongly supports our construction.[6] The history of section 2071.1, added in 2001 (Stats. 2001, ch. 583, § 5), is unequivocal that the motivating purpose was to provide protections for insurance consumers during the claims process.  Section 1 of the enacted bill expressly so provides: "Existing legal protections for insurance policyholders proved to be inadequate after the Northridge earthquake.  The public requires additional safeguards against unfair claim settlement practices by insurance companies.  It is the intent of the Legislature that the provisions of this act add *basic consumer protections* to those currently set forth in the Insurance Code and supporting regulations."  (Stats. 2001, ch. 583, § 1, italics added.)

As the bill's author explained, "Existing law needs to be modernized.  It allows insurers to use lawyers to delay claim settlements, conduct fishing expeditions, intimidate and harass innocent consumers while ostensibly investigating their claims, but provides few balancing protections for claimants."  (Sen. Com. on Ins., Background Information Request for Sen. Bill

---

[5] This purpose is not impacted by the statute's recognition that "An insured who submits a fraudulent claim may be subject to all criminal and civil penalties applicable under law" (§ 2071.1, subd. (a)(7)), a provision that simply restates existing law.

[6] We grant plaintiff's June 2, 2023 unopposed request for judicial notice of certain legislative history materials.

7

No. 658 (2001–2002 Reg. Sess.), p. 3.)[7]  Other supporters of the bill similarly

contended "that the current EUO process was enacted in 1949 and gives

'virtually unlimited investigation rights to insurance companies' with little

consumer protection."  (See Sen. Rules Com., Off. of Sen. Floor Analyses,

analysis of Sen. Bill No. 658 (2001–2002 Reg. Sess.) as amended Sept. 12,

2001, p. 7.)  "The author introduced this bill to address concerns by property

owners who had been subjected to abuses by insurance companies during the

insurance claim process, including individuals and victims of the 1991

Oakland firestorm and the 1994 Northridge earthquake. [¶] . . . [T]he bill

establishes basic due process rights for insureds who are subjected to EUOs,"

among other protections.  (Assem. Floor Analysis, 3d reading analysis of Sen.

Bill No. 658 (2001–2002 Reg. Sess.) as amended Sept. 12, 2001, p. 3.)  Thus,

the legislation was intended to not only enhance the process due an insured

but also provide consumer protection provisions, such as the right to record.[8]

To be sure, the legislative history does not explicitly address whether

section 2071.1(a)(4) encompasses the right to video record the insurer's

representatives.  However, it demonstrates an express and unequivocal

intent to protect insureds from harassment in EUO proceedings, and this

purpose is served by granting insureds such a right.  Significantly, video

records nonverbal conduct, such as eye-rolls or glares, which would not be

---

[7] "Courts consider such background information documents in discerning legislative intent."  (*California Fair Plan Assn. v. Garnes* (2017) 11 Cal.App.5th 1276, 1296, fn. 23.)

[8] The dissent suggests the Legislature intended to provide *only* due process protections.  We see no basis in the statutory language or legislative history to so limit the statute.  To the contrary, the Legislature's express intent was to "add *basic consumer protections* to those currently set forth in the Insurance Code and supporting regulations."  (Stats. 2001, ch. 583, § 1, italics added.)

captured by audio recordings or reporter's transcripts. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2023) ¶8:659.) In addition, the knowledge that a person is being video recorded may prompt that person to modify their behavior in a positive manner. (Cf. *ibid.* [video recording a deposition witness "tends to make the witness more candid. (The 'eye of the camera' is upon him or her, etc.)"].) " '[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.' " (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 530.) Granting insureds the right to record the insurer's representatives furthers the Legislature's purpose to protect insurance consumers from harassment during EUOs.[9] For this reason, we reject Nationwide's argument that video recording an insurer's representatives is unreasonable.

In addition, the legislative history reveals the Legislature expanded the scope of an insured's right to record EUOs during the amendment process. As initially introduced, the bill amended section 2071, which sets forth the standard form of fire insurance policy, to afford an insured subject to an EUO the right to "tape-record the examination." (Sen. Bill No. 658 (2001–2002 Reg. Sess.) as introduced Feb. 23, 2001, § 5, p. 9.) Subsequently, the bill was amended both to apply the EUO protections more broadly to all property insurance policies, and to expand the recording right to encompass the right

---

[9] Plaintiff argues it is important to capture the body language of not just the person examining the insured, but also "non-examining participants such as adjusters and fraud investigators . . . who are routinely present at EUOs." For in-person EUOs, such as plaintiff's, we agree. For remote EUOs, however, we find that the face of a remote viewer whose camera is turned off or who is otherwise not visible on the teleconferencing platform—and who therefore cannot convey nonverbal signals—is not part of the proceedings for purposes of section 2071.1(a)(4).

9

to "record the examination proceedings in their entirety." (Sen. Bill No. 658 (2001–2002 Reg. Sess.) as amended May 9, 2001, § 4, p. 11.) This expansion of the right to record—from "tape-record[ing]" to "record[ing]" and, more significantly for our purposes, from "the examination" to "the examination proceedings in their entirety"—reveals a legislative intent that the insured's right to record the EUO proceedings be comprehensive. We see no basis to exclude from this broadly phrased and intentionally expanded right the right to video record the insurer's representatives.[10]

Nationwide argues that construing section 2071.1(a)(4) to entitle insureds to video record the insurer's representatives in an EUO will increase costs and delays with no attendant benefit—in essence, an argument that such a construction would be contrary to "the presumption that the Legislature intends reasonable results consistent with its apparent purpose." (*Catholic Mutual Relief Society v. Superior Court* (2007) 42 Cal.4th 358, 372.) We are not persuaded.

Nationwide contends additional costs will flow from "requiring someone to manage the camera for the duration of the Examination Under Oath," and delays will ensue from "the amount of time needed to setup the additional

---

[10] The dissent acknowledges the significance of this expanded language, but construes the expansion as *temporal*, such that the right to record extends beyond the questions and answers of the examination to encompass all discussions and exchanges from, presumably, the moment the participants enter the room or join the videoconference until the moment they leave. The parties did not brief this issue on appeal, so we need not resolve it. But we note that it may be reasonable to construe the statute to include such a temporal completeness. In any event, there is no reason why the interpretation proposed by the dissent precludes the construction adopted in this opinion that the right includes video recording the insurer's representatives. Indeed, as discussed above, our construction furthers the Legislature's purpose of protecting insureds from harassment during EUO proceedings.

10

camera(s)" and the possibility of "technical difficulties."[11] The record before us indicates EUOs are held both in person (as plaintiff's was scheduled to be) and on Zoom or other videoconferencing platforms (as Kumar's was scheduled to be). With respect to the former, Nationwide does not claim video recording of EUOs must be done by a professional videographer, and the need for a videographer, or indeed for any person to constantly manage the camera, has been obviated by current technology. "Smartphones that become video cameras with the flick of a thumb are ubiquitous" (*Nieves v. Bartlett* (2019) 139 S.Ct. 1715, 1739 (dis. opn. of Sotomayor, J.)), and such a smartphone can be placed on a tripod or otherwise propped up and left to record the insurer's representatives, without the need for a person standing by.[12] If the EUO is conducted on a videoconferencing platform, it is simply a matter of the insured recording the screen on their device. We presume the cost and delay attributable to recording an insurer's representatives will be, in most if not all cases, de minimus.[13]

---

[11] Nationwide's assertion that delay is exemplified by this action scarcely warrants mention. The delay in this case, of course, was not caused by any video recording arrangements—which Nationwide refused to permit— but rather by the parties' dispute and subsequent litigation over whether plaintiff was entitled to make such arrangements.

[12] At a hearing in a separate action, the transcript of which was submitted by Nationwide below, plaintiff's counsel represented that his practice for videotaping everyone at EUOs is to set up "one tripod with an iPod (sic) on it," which is placed "in the corner of the room, and it … pretty much captures everyone, usually side or angled views."

[13] To the extent there is a cost, counsel for both parties stated at oral argument that the insured bears the cost of any recording made pursuant to section 2071.1(a)(4). We agree that section 2071.1(a)(4) assigns any cost to the insured. Although section 2071.1, subdivision (a)(5), entitles an insured to a free copy of any audio or video recording the insurer has elected to have made (see *ante,* fn. 3), subdivision (a)(4) provides the insured "may record"

11

Nationwide also argues there is no benefit to insureds to video record the insurer's representatives.  Nationwide contends other protections are sufficient, to wit, the ability of an insured to file a complaint about their insurer—including any improper conduct during an EUO—with the Department of Insurance (§ 12921.1, subd. (a)).  This complaint procedure was in effect when section 2071.1 was enacted, and the Legislature found it insufficient to secure the rights of insureds in the EUO process.  (See § 12921.1, subd. (a) [mandating complaint procedure be established "on or before July 1, 1991"]; Stats. 2001, ch. 583, § 5 [adding § 2071.1].)  The Legislature may quite sensibly have concluded that such complaints would be more easily resolved if insureds could record all aspects of the proceedings, or that enabling insureds to record the insurer's representatives could help prevent improper conduct in the first instance and thereby obviate the need for a complaint.  Nationwide also asserts there is no need to video record the insurer's participants because the questions asked by the insurer's representative will be captured by the reporter's transcript or on the audio portion of any video recording of the insured.  As we have already discussed above, these methods do not capture nonverbal conduct, which may be intimidating or harassing.

In sum, the plain language, statutory framework, and legislative history all support a construction of section 2071.1(a)(4) granting insureds

the proceedings.  This difference supports the parties' agreement that if the insured wants a recording beyond any that the insurer is making, the insured must arrange and pay for that recording.

12

the right to make a video recording of the insurer's representatives at an EUO, and such a construction is not unreasonable.[14]

II.    *Fees Appeal*

Plaintiff argues the trial court erred in denying his motion for attorney fees under Code of Civil Procedure section 1021.5.  We agree.

---

[14] The dissent also seems to argue that, even if we have properly interpreted section 2071.1(a)(4), the insurer may deny the claim if the insured insists on video recording all or some of the insurer's participants at the EUO.  The dissent relies on 3 cases as authority; we find each inapposite.  In *Hickman v. London Assurance Corp.* (1920) 184 Cal. 524, the insured argued the privilege against self-incrimination permitted him to refuse to answer questions at the examination without suffering a forfeiture of its claim.  The court disagreed with the underlying premise: no such privilege existed as to "a private examination arising out of a contractual relationship." (*Id.* at p. 532.)  In *Brizuela, supra,* 116 Cal.App.4th 578, the insured *improperly* conditioned his participation in an EUO on the insurer providing him with a copy of a prior recorded statement he had given.  (*Id.* at p. 589 ["There is no authority for the proposition that an insurer is under a legal obligation to provide an insured with a copy of the insured's previously recorded statements taken before a civil action has been filed and discovery commenced."].)  The statutory provision discussed in *Abdelhamid, supra,* 182 Cal.App.4th 990, granting insureds the right to object to certain questions, included the express qualification that if an insured asserts that statutory right, "the rights of the insured under the contract may be affected" if, "as a result of asserting an objection, an insured fails to provide an answer to a material question, and that failure prevents the insurer from being able to determine the extent of loss and validity of the claim."  (§ 2071.1, subd. (a)(6); see *Abdelhamid,* at p. 1004.)  No such language appears in section 2071.1(a)(4), strongly suggesting the Legislature did not intend that right to be similarly qualified.  Further, in each of these cases, the court could conclude that the insured's conduct undermined the insurer's ability to investigate the claims.  In contrast, an insured's exercise of the right to record the entire EUO proceedings has no impact on the insurer's ability to investigate the underlying claim.  There is no reason to construe the statute, as the dissent suggests, as obligating an insured to submit to an EUO despite the insurer's refusal to comply with section 2071.1(a)(4).

13

A.    *Legal Background and Standard of Review*

"[Code of Civil Procedure] [s]ection 1021.5 authorizes an award of fees when (1) the action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons ...,' and (3) 'the necessity and financial burden of private enforcement ... are such as to make the award appropriate....' " (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1026.)  "The Legislature enacted the provision to codify the private attorney general doctrine previously developed by the courts.  [Citations.]  The doctrine rests on the recognition that privately initiated lawsuits, while often essential to effectuate important public policies, will as a practical matter frequently be infeasible without some mechanism authorizing courts to award fees.  [Citations.]  Accordingly, ' "the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." ' " (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250 (*Vasquez*).)

"Generally, we review an award [or denial] of attorney fees under section 1021.5 for an abuse of discretion." (*McCormick v. Public Employees' Retirement System* (2023) 90 Cal.App.5th 996, 1004 (*McCormick*); see also *Choi v. Orange County Great Park Corp.* (2009) 175 Cal.App.4th 524, 528–529 (*Choi*).)  However, "the appellate court does not have to defer totally to the trial court when the litigation results in a published appellate opinion. 'In that case ... the appellate court often is well situated to decide (1) whether the legal action has a significant impact on the law because it enforces an important legal right, and (2) whether that decision confers a significant benefit on a substantial segment of the citizenry.' [Citations.]  Here, the trial

14

court did not know that the litigation would result in a published opinion interpreting the meaning of [a statutory provision]. [Citation.] Thus, the lower court performed its assessment of the case without access to all the pertinent circumstances available now. [Citation.] The lower court could not consider how the application of the 'important right' and 'significant benefit' criteria of section 1021.5 are affected by the change in circumstances caused by our published decision." (*Early v. Becerra* (2021) 60 Cal.App.5th 726, 737 (*Early*); see also *McCormick,* at p. 1005 [because litigation resulted in published appellate opinion, "we will independently review the trial court's assessment of the significant-benefit element"].)

B.   *Important Right*

"When determining whether a litigant has vindicated an important right affecting the public interest, '[t]he "judiciary [must] exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." [Citation.] "The strength or societal importance of a particular right generally is determined by realistically assessing the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." ' " (*City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 710 (*City of Oakland*).) "Courts have broadly interpreted the important right concept and 'frequently reject attempts to characterize rights in their most narrow or personal light.' " (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 988.)

The trial court found this element not established, reasoning, "While the Court agrees with Plaintiff that the Legislature targeted a perceived problem by enacting the statute to curb abuses by insurance companies during the claims process, the Court finds the ability to record operates as a

15

tool in promoting the efficiency of the proceedings and not as a[] 'right' of 'societal importance' or a determinative factor of whether due process is being afforded."

We respectfully disagree with the trial court's characterization of the right to record. As indicated by the legislative history discussed above, the Legislature affirmatively expanded the right to record during the bill amendment process and clearly contemplated the right as a means of protecting insureds from harassment and abuse by insurance companies during EUOs. The Legislature expressly stated its intent that the bill enacting section 2071.1 "add[s] *basic consumer protections* to those currently set forth in the Insurance Code and supporting regulations." (Stats. 2001, ch. 583, § 1, italics added.) "[T]he enforcement of the California consumer protection laws" has been recognized as "an important right affecting the public interest." (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 703 [lawsuit challenging products' claim to be "Made in U.S.A." when parts of the products were manufactured outside United States vindicated an important right].)

The publication of Part I, resolving the merits appeal, further weighs in favor of finding an important right. "[W]hile 'the fact of publication does not reach the level of a "prima facie showing" the right was important ..., it goes some distance in that direction.' " (*City of Oakland, supra,* 29 Cal.App.5th at p. 710; accord, *Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 764 ["The publication of an opinion suggests that the case involved a matter of public importance."].)

The Legislature considered the right to record necessary to further the legislative goal of protecting insureds during the claims process. We find it

16

sufficiently important to satisfy Code of Civil Procedure section 1021.5's requirement.

C. *Significant Benefit*

"When determining whether a lawsuit conferred a significant benefit on the general public or a large class of persons, a trial court should perform 'a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case.' [Citation.] 'The extent of [the significant benefit] " ' "need not be great," ' " "[n]or is it required that the class of persons benefited be ' "readily ascertainable." ' " ' [Citations.] 'Furthermore, "evidence of the size of the population benefited by a private suit is not always required. The substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefited." ' " (*McCormick, supra,* 90 Cal.App.5th at p. 1005.) "The courts are not required to narrowly construe the significant benefit factor." (*Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 543; see also Cal. Attorney Fee Awards (Cont. Ed. Bar 3d ed. 2023) § 3.51 ["As with the important right factor, courts have broadly construed the significant benefit factor."].)

The trial court found this element not established, reasoning, "Plaintiff's counsel speculates that 'if the result here is applied … to Nationwide insureds, it would confer a significant benefit to tens of thousands of Nationwide's California customers.' Even assuming a change in Nationwide's policy, Plaintiff[] does not provide evidence of any conduct by [N]ationwide examiners that has been a source of concern and that has now been rectified. Plaintiff has not made a sufficient showing of a significant benefit on a large class or the general public." (Record citation omitted.)

17

The trial court's focus on the lack of evidence that Nationwide engaged in harassing and abusive behavior was misplaced. Plaintiff was not obligated to so establish; instead, it is sufficient that the law was expressly enacted to address such problems and Nationwide refused to comply with this aspect of it.

Obtaining a published opinion establishing the recording rights of insureds subject to EUOs is a substantial benefit to all property insurance holders in the state. Nationwide must stop refusing such requests, and any other insurers that have taken the same position must also stop. Further, plaintiff's success on appeal ensures that companies that have been complying with such requests will continue that practice. That a national policyholder advocacy organization filed an amicus brief on plaintiff's behalf in the merits appeal is a testament to the significance of the determination for insureds. (See *Surfrider Foundation v. Martins Beach 1, LLC* (2017) 14 Cal.App.5th 238, 279 ["The significance of that legal determination is attested by the amicus curiae briefs filed in support of both parties on appeal."].)

D. *Necessity and Financial Burden*

The trial court did not determine whether plaintiff established necessity and financial burden. The parties have briefed the issue on appeal and, as a matter of judicial efficiency, we will decide it in the first instance.

"[T]he necessity and financial burden requirement ' "really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' [Citation.] The 'necessity' of private enforcement ' " ' "looks to the adequacy of public enforcement and seeks economic equalization of representation in cases where private enforcement is

18

necessary." ' [Citations.]" ' [Citation.] . . . [¶] The second prong of the inquiry addresses the 'financial burden of private enforcement.' In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214–1215 (*Whitley*).)

Nationwide argues private enforcement was not necessary because public enforcement was available under section 12921.1, which directs the Insurance Commissioner to establish a program "to investigate complaints . . . and, when warranted, to bring enforcement actions against insurers or production agencies." (§ 12921.1, subd. (a).)[15] But the bare possibility of public enforcement does not preclude an award of attorney fees. Thus, a defendant's argument that "private enforcement was not necessary since public enforcement was available through the Department of Fair Employment and Housing (DFEH)" was rejected because "[t]here is nothing to ensure DFEH could have or would have prosecuted the claim. As a practical matter, public agencies cannot be expected to take every meritorious case. One of the justifications for the private attorney general doctrine is a recognition that: 'In the complex society in which we live it frequently occurs that citizens in great numbers and across a broad spectrum have interests in common. These, while of enormous significance to the

---

[15] Although Nationwide also suggests section 2071.1, subdivision (b), constitutes an avenue for public enforcement, this provision only directs the Insurance Department to "conduct a study quantifying the number of examinations under oath performed by carriers regulated by the department and the number of contacts made by consumers regarding alleged concerns with the utilization of the examination under oath process for the resolution of pending claims." We fail to see how such a study constitutes a public enforcement mechanism.

19

society as a whole, do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts. *Although there are within the executive branch of the government offices and institutions ... whose function it is to represent the general public in such matters and to ensure proper enforcement, for various reasons the burden of enforcement is not always adequately carried by those offices and institutions, rendering some sort of private action imperative.'* " (*Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1468–1469; accord, *Committee To Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 641, fn. 9 ["Neither party to this appeal has submitted authority holding that an individual who wishes to pursue an action to benefit the public, grounded on Business and Professions Code section 17200 et seq. (or any similar statute), can only obtain section 1021.5 fees if she has first solicited the public entity having appropriate statutory authority to sue on behalf of the public to remedy the same perceived public injury.  Section 1021.5 and its legislative history . . . do not suggest such a precedent condition to entitlement to such fees."].)  It is undisputed that no public enforcement action was pending at the time of plaintiff's lawsuit.  Plaintiff established that private action was necessary.

As for the financial burden prong, the expected litigation benefits that may offset the litigation costs are solely monetary ones.  (*Whitley, supra,* 50 Cal.4th at p. 1217 ["As a logical matter, a strong nonfinancial motivation does not change or alleviate the 'financial burden' that a litigant bears.  Only offsetting pecuniary gains can do that."].)  Because no money judgment would result from the underlying litigation seeking declaratory relief on the legal

issue, the actual litigation costs plainly exceed the expected monetary award.[16]  Nationwide makes no contrary argument.

E.  *Fee Amount*

Nationwide raises arguments challenging the amount of fees sought by plaintiff.  We decline to determine a reasonable fee award, which is properly addressed by the trial court in the first instance.  We will remand for the trial court to make this determination.

## DISPOSITION

In case number A166946, we affirm the judgment.  In case number A167445, we reverse and remand.  Plaintiff shall recover his costs on appeal.

SIMONS, J.

I concur.

BURNS, J.

(A166946/A167445)

---

[16] Any monetary benefit plaintiff may ultimately gain in his insurance claim is too remote to be considered as an offset of the litigation costs.  (See *Early, supra,* 60 Cal.App.5th at p. 742 [" ' "Where personal benefits are a step removed from the results of the litigation, the potential benefit is indirect and speculative, and thus, a trial court does not abuse its discretion in concluding that the financial burden criterion is satisfied for purposes of [Code of Civil Procedure] section 1021.5." ' "].)

21

JACKSON, P. J., Dissenting:

I respectfully dissent from the majority's opinion because I disagree with the majority's interpretation of section 2071.1(a)(4).

Section 2071.1(a)(4) provides, in part, that an insured "may record the examination proceedings in their entirety." In this declaratory relief action, plaintiff sought and obtained a court order that Nationwide "violated" section 2071.1(a)(4) and the applicable insurance contract when it "demanded" an EUO of plaintiff "but refused to permit [plaintiff] to 'record the examination proceedings in their entirety," and "actually conditioned or threatened to condition payment of policy benefits" on plaintiff's participation in an EUO "in which [he] would be forced to forgo exercising [his] rights under [section] 2071.1(a)(4)." This ruling is contrary to the applicable law and the terms of the parties' agreement.

The standard form fire insurance policy, as set forth in section 2071, provides, in relevant part, "The insured, as often as may be reasonably required and subject to the provisions of Section 2071.1, *shall* . . . submit to examinations under oath by any person named by this company . . . ." (Italics added.) Section 2071.1, in turn, provides, in relevant part, "This section applies to an examination of an insured under oath pursuant to Section 2071 labeled 'Requirements in case loss occurs' and other relevant provisions of that section, and to any policy that insures property and contains a provision for examining an insured under oath . . . ." (§ 2071.1, subd. (a).)

Under the section entitled "Duties After Loss," the standard Nationwide policy provides, in part, as follows: "In case of a loss to covered property, we have no duty to provide coverage under this policy if you or an 'insured' seeking coverage fails to comply with the following conditions: [¶] . . . [¶] . . . As often as we reasonably require: [¶] . . . [¶] . . . Submit to an

22

examination under oath by our representative . . . .  Upon request, the exams will be conducted separately and not in the presence of any other persons except the legal representative of the person submitting to the examination under oath, our representatives and a court reporter . . . ."  (Boldface omitted.)

Read together, the plain statutory and contract language unequivocally require an insured to submit to an EUO.  Despite this clear directive, the trial court found Nationwide violated the law by requiring plaintiff to adhere to these statutory and contractual requisites.  This conclusion is based on an erroneous interpretation of section 2071.1(a)(4).

Section 2071.1 provides an insured subject to an EUO "*may* record the examination proceedings in their entirety."  (§ 2071.1, subd. (a)(4), italics added.)  A preliminary, but crucial step, in interpreting this phrase is examining the word "may."  Section 16 of the Insurance Code, one of the general provisions applicable to all sections of the code, instructs that the word "shall" is mandatory and the word "may" is permissive, unless otherwise provided from the context.  Nothing in section 2071.1 provides that an EUO—beyond transcription—*must* be recorded in a particular manner.  Indeed, subdivision (a)(5) provides an insurer "*shall* notify the insured that, upon request and free of charge, it *will provide* the insured with a copy of *the transcript* of the proceedings and *an audio or video recording* of the proceedings, *if one exists*."  (Italics added.)  The references to "shall" and "will" with regard to "the transcript" juxtaposed with "an audio or video recording . . . if one exists" reflect the former is required while the latter is permissive.  Subdivision (a)(4)—which provides an insured *may* record the examination proceedings—is consistent with the interpretation that additional forms of recording are permitted but not required.

Had the Legislature wanted to confer specific recording *rights*, it could have done so as it has done in a variety of other contexts. For example, persons attending various public meetings "*shall have the right to record the proceedings* with an audio or *video* recorder . . . ." (Gov. Code, §§ 11124.1, subd. (a), 54953.5, subd. (a), italics added; see Welf. & Inst. Code, § 4660.) Similarly, in the context of certain licensing matters, "[a]ll proceedings relating to an application at a meeting of the commission or at an evidentiary hearing *shall be recorded* stenographically or by audio or *video recording*." (Bus. & Prof. Code, § 19870, subd. (e), italics added; see Health & Saf. Code, § 1736.5, subd. (g)(2) [disciplinary "hearing shall be audio or video recorded"]; Elec. Code, § 21160, subd. (g)(1) [in redistricting process "local jurisdiction shall either video or audio record or prepare a written summary of each oral public comment"]; but see Code Civ. Proc., § 2025.330, subd. (c) [party noticing deposition "*may* also record the testimony by audio or video technology *if* the notice of deposition stated an intention also to record the testimony by either of those methods" (italics added)].)

Here, the Legislature could have specified—but did not—that the insured "shall" have the "right to video record the examination proceedings." Nevertheless, even assuming the phrase "may record" bestows upon the insured the *right* to video record the proceedings, nothing in the statutory language suggests the insured has the right to video record the insurer's participants, including its attorneys and claims adjusters.

Section 2071.1, does not define "examination," "proceedings" or "entirety" and does not otherwise address what acts are encompassed or excluded by these terms. In the absence of a legislative definition, it is permissible to look to case law as a source to define the terms in question. (*Cleveland v. Taft Union High School Dist.* (2022) 76 Cal.App.5th 776, 806.)

24

Words of a statute are given their usual and ordinary meanings.  (*Ibid.*)
" 'When attempting to ascertain the ordinary, usual meaning of a word,
courts appropriately refer to the dictionary definition of that word'  (*Wasatch
Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122
[citations]), although the process of interpreting statutes involves more than
simply stitching together dictionary definitions [citation]."  (*Ibid.*)

" 'Examination' is defined as '(examination of the witness by counsel)
[i]nvestigation, questioning, probing, probe, scrutiny, inquiry,' in Statsky,
West's Legal Thesaurus/Dictionary (West, 1986) at page 291.  The word is
commonly understood to mean interrogation with questions and answers."
(*Globe Indemnity Co. v. Superior Court* (1992) 6 Cal.App.4th 725, 730.)

"Proceeding" has been defined in various ways, ranging from the broad
to the specific.  Definitions of the term fall into one of two categories:
"Proceeding" may be used either in a general sense as " 'the form and manner
of conducting juridical business before a court or judicial officer;' and more
particularly as '[a]n act which is done by the authority or direction of the
court . . . ; an act necessary to be done in order to obtain a given end.' "
(*People v. Silverbrand* (1990) 220 Cal.App.3d 1621, 1627.)  Finally, "entirety"
is defined as "[t]he whole, as opposed to a moiety or part."  (Black's Law Dict.
(11th ed. (2019) p. 673, col. 2.)

As nothing in the plain statutory language or related definitions
supports the meaning urged by plaintiff, it is necessary to consider the
legislative history.  It is undisputed that section 2071.1 was enacted due to
concerns about perceived harassment of insureds by insurance companies.
However, nothing in the legislative history suggests the Legislature intended
to reduce harassment and intimidation by giving insureds the right to video
record everyone present at an EUO.  Rather, the legislative history reflects

section 2071.1 was enacted to establish "basic due process rights" for insureds who are subject to EUOs.  (Assem. Com. on Ins., Background Info Re: SB 658, p. 1.)  Although the exact parameters of these "basic due process rights" were not otherwise specified, the legislative history reflects Senate Bill No. 658 (2001–2002 Reg. Sess.) (Senate Bill 658) was promulgated to provide greater protections to insureds by ensuring they are aware of the law of unfair claims practices and other insurance practices.  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 658 (2001–2002 Reg. Sess.) as amended May 25, 2001, pp. 1–2.)  Senate Bill 658 also announced new restrictions on the taking of evidence during EUOs, most notably by limiting the scope to " 'relevant' " information that is reasonably necessary to process or investigate the claim.  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 658, *supra*, at p. 2.)  Additionally, insurance companies, once unhindered in conducting EUOs, would be constrained by reasonable limits in terms of notice, place, and time.  (*Ibid.*)  Insureds could also be represented by counsel and assert any objection that could be made in a deposition under state or federal law.  (*Id.* at pp. 2–3.)  Other protections required that the same adjuster be used throughout the claim process to prevent insureds from having to go back to square one each time a new adjuster was assigned to the claim.  (*Id.* at p. 3.)

Nothing in the legislative history suggests an insured's ability to video record an EUO—let alone video record an insurance company's participants—is necessary to safeguard an insured's basic due process rights.[17]  In fact, there is little, if any, discussion in the legislative history

---

[17] Indeed, in California, criminal defendants are not entitled to video recorded interrogations except under extremely limited circumstances.  (See Pen. Code, § 859.5; Welf. & Inst. Code, § 626.8 [adults and juveniles

about specific recording methods. And what minimal references there are, none mention an insured's right to video record an insurer's participants.

As noted, Senate Bill 658 originally used the following language: "[T]he insured may tape-record the examination and be represented by counsel." (Sen. Bill No. 658 (2001–2002 Reg. Sess.) as introduced Feb. 23, 2001, § 5, pp. 8–9.) Section 2071.1(a)(4) as enacted reads, in part, that an insured subject to an EUO "may record the *examination proceedings in their entirety*." (Italics added.) Plaintiff argues the italicized language supports an expansive view of insureds' rights, which necessarily includes the ability to video record the insurance company's attorneys and other participants. Not so.

The two key differences between the original language and section 2071.1(a)(4) as enacted are: (1) "may tape-record" became the more general "may record"; and (2) "the examination" became "the examination proceedings in their entirety." To be sure, the law as enacted expanded an insured's methods of recording an EUO by removing the outdated reference to "tape-record." Similarly, changing "examination" to "examination proceedings in their entirety" expanded the scope of what an insured is able to record. However, this rewording does not establish an insured has a *right* to video record all participants at an EUO. Rather, a more reasonable interpretation is that insureds are permitted to record not just the examination (i.e.—the questions and answers), but everything that occurs during the whole proceeding (from start to finish)—thereby guarding against

---

suspected of murder]; see also Bang et al., *Police recording of custodial interrogations: A state-by-state legal inquiry* (2018) 20(I) Internat. J. Police Sci. & Mgmt. 3–18.) And, even then, there is no requirement that the interrogators themselves must be video recorded. (See Pen. Code, § 859.5; Welf. & Inst. Code, § 626.8.)

27

any off-the-record discussions or remarks that could potentially implicate untoward conduct on the part of an insurer.

The legislative history reflects section 2071.1 was designed as a means to level the playing field for insureds during EUOs, by educating insureds about their rights; placing limits on the scope of acceptable questions; allowing insureds to assert objections to questions; and requiring insurers to conduct EUOs in a reasonable manner in terms of notice, location, and duration. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 658, *supra*, pp. 1–3.) These procedural safeguards are consistent with the fundamental hallmarks of due process, as they provide an insured with notice and a meaningful opportunity to be heard. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, §§ 7 & 15; see *People v. Silva* (2021) 72 Cal.App.5th 505, 523.)

Nothing in the legislative history supports the position that the ability to video record all participants at an EUO is a "right" or a determinative factor of whether due process is being afforded. The trial court found as much in denying plaintiff's request for private attorney general fees. As the trial court explained, "the Legislature targeted a perceived problem by enacting [section 2071.1] to curb abuses by insurance companies during the claims process, [and] the ability to record operates as a *tool* in promoting the efficiency of the proceedings . . . ." (Italics added.) This interpretation— which is consistent with the statutory language and legislative history—is contrary to the judgment finding Nationwide "violated" the law when it conditioned payment of policy benefits by requiring plaintiff "to forgo exercising [his] rights under [section] 2071.1(a)(4)."

Case law has long confirmed an insurer may contractually require, as a condition of coverage, that an insured submit to an EUO. (See, e.g., *Globe*

*Indemnity Co. v. Superior Court, supra*, 6 Cal.App.4th at pp. 730–731; *Robinson v. National Automobile & Casualty Co.* (1955) 132 Cal.App.2d 709, 716; *West v. State Farm Fire and Cas. Co.* (9th Cir.1989) 868 F.2d 348, 351.)

*Hickman v. London Assurance Corp.* (1920) 184 Cal. 524 illustrates this principle. There, an insured was criminally charged with arson. (*Id.* at p. 526.) While the charges were pending, the insured appeared for an EUO but refused to answer questions and produce documents on the advice of counsel that his answers could be used against him at his criminal trial. (*Id.* at pp. 527–528.) He asserted his constitutional right against self-incrimination. (*Id.* at pp. 531–532.) He offered to submit to an examination after the conclusion of the criminal prosecution. (*Id.* at p. 528.) The California Supreme Court concluded the insured's refusal to submit to examination and to produce his books and papers on the ground of his constitutional immunity was not justified, as the constitutional privilege did not apply and his production of documents and examination was a "condition precedent" to his right to benefits under the policies. (*Id.* at pp. 532, 534.) The court stated: " 'If the insured cannot bring himself within the terms and conditions of the policy he cannot recover. The terms of the policy constitute the measure of the insurer's liability. If it appears that the contract has been violated, and thus terminated by the assured, he cannot recover. He seeks to recover by reason of a contract, and he must show that he has complied with such contract on his part.' " (*Id.* at p. 534.)

While these cases predate the enactment of section 2071.1, "they reflect a strong insistence on an insured's performance of the contractual conditions required for coverage, even when the insured might have a legitimate legal basis for not wanting to comply." (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 1003–1004 (*Abdelhamid*).)

29

Subsequent cases have refused to excuse an insured from complying with the statutorily mandated and contractually required precondition of submitting to an EUO. For example, in *Abdelhamid* an insured appeared for an EUO but refused to answer questions about her business or personal finances on the advice of counsel. (*Abdelhamid, supra*, 182 Cal.App.4th at p. 996.) The insurance company denied her claim in part on the grounds that her failure to answer questions during the examination breached a condition precedent to her recovery under the policy. (*Ibid.*) The trial court granted summary adjudication on the insured's breach of contract claim. (*Id.* at p. 998.) In affirming summary adjudication in favor of the insurer, the reviewing court found it "significant" that the terms of the standard fire insurance policy in California, which have been "prescribed by the California Legislature," required an insured to submit to an EUO. (*Abdelhamid*, at p. 1004; §§ 2070, 2071.) Turning to subdivision (a)(6) of section 2071.1,[18] the court acknowledged the Legislature had "specifically recognized an insured's right to withhold information on the basis of privilege or other legal objection. But, it has also recognized such information may be necessary to the insurer's investigation of the claim and, where the failure prevents the insurer from being able to determine the validity of the claim or extent of loss, the Legislature has acknowledged the insured's rights under the contract may be affected. The Legislature has placed that risk on the insured." (*Abdelhamid*, at p. 1004.) The court refused "to . . . adopt a rule that excuses insureds from

---

[18] Section 2071.1, subdivision (a)(6), provides: "In an examination under oath, an insured may assert any objection that can be made in a deposition under state or federal law. However, if as a result of asserting an objection, an insured fails to provide an answer to a material question, and that failure prevents the insurer from being able to determine the extent of loss and validity of the claim, the rights of the insured under the contract may be affected."

30

complying with the statutorily mandated and contractually required preconditions for coverage after a loss because they assert a privilege or an objection relying on the advice of counsel," as this "would undermine this statutory scheme." (*Id.* at pp. 1004–1005.)

As the insured did in *Abdelhamid*, plaintiff urges an interpretation that is antithetical to established precepts of law. The Legislature has recognized an insured's right to "record the examination proceedings in their entirety." (§ 2071.1, subd. (a)(4).) But, it has not authorized a rule excusing insureds from the statutorily mandated and contractually required preconditions for coverage—that they submit to EUOs—because they are unable to video record the insurer's participants and representatives.

Similarly instructive is *Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, which involved an insured's attempt to trade an agreement to submit to an EUO in exchange for copies of his prior recorded statements. (*Id.* at p. 583.) There, the insured repeatedly failed to provide a date for the EUO and conditioned any examination on the insurance company's providing him with copies of his previous statements. (*Ibid.*) The insurance company refused to accede to the insured's request and denied the claim. (*Id.* at p. 585.) Finding no legal obligation to provide an insured with a copy of the insured's previously recorded statements, the court upheld summary judgment for the insurance company on the grounds that its actions were reasonable as a matter of law. (*Id.* at pp. 585–586, 588–589.) The court found the insured was not permitted to condition his EUO on a requirement that the insurer provide him with copies of his previous statements. (*Id.* at pp. 589–590.) *Brizuela* recognized that "[e]ven if there might be circumstances when it might be unfair or unreasonable for an insurer to demand an examination under oath without complying with an insured's

request for an earlier recorded statement," there the insured gave no reason why the insurer's refusal to provide the statement was unfair or unreasonable. (*Ibid.*)

So too here, there is no authority for the position that an insured is entitled to video record an insurance company's employees and representatives during an EUO. And, given the absence of any evidence suggesting Nationwide has conducted itself in an intimidating, abusive, or harassing manner in its handling of plaintiff's claim, nothing suggests Nationwide's refusal to allow the video recording of anyone other than plaintiff was unfair or unreasonable.

From review of the plain language of section 2071.1 and its legislative history, together with the applicable case law and statutory scheme, the conclusion is that section 2071.1(a)(4) does not give an insured an unqualified right to video record an insurance company's participants in every instance and/or a concomitant right to refuse to participate in an EUO unless this specific method of recording is permitted.


Jackson, P. J.

## Myasnyankin v. Nationwide Mutual Insurance Co. (A166946/A167445)

Trial Judge:      Hon. Tara Desautels

Trial Court:      Alameda County Superior Court

Attorneys:

      BHC Law Group, LLP, Karen L. Uno; Hayes, Scott, Bonino, Ellingson & Guslani, LLP, Mark G. Bonino and Donald L. Hall, III for Defendant and Appellant in A166946 and Defendant and Respondent in A167445.

      Kerley Schaffer LLP, Dylan L. Schaffer for Plaintiff and Respondent in A166946 and Plaintiff and Appellant in A167445.

      Amy Bach and Richard B. Oatis for United Policyholders as Amicus Curiae on behalf of Plaintiff and Respondent in A166946.